# HIRAM JONES

### *v.*

## THE CHICAGO AND IOWA RAILROAD COMPANY.

1. RIGHT OF WAY—*damages confined to property described in the pleadings.* On the assessment of damages for a right of way for a railroad company, the inquiry as to damages should be confined to the tract of land described in the petition, in the absence of a cross-bill by the defendant showing that he owns contiguous lands which will be damaged.

2. SAME—*neglect to fence as an element of damages.* Where a railroad company has fenced its track through land it is seeking to condemn for right of way, it is not erroneous to instruct the jury assessing the damages not to consider the failure to maintain the fences as an element of damage.

3. SAME—*farm crossings.* But farm crossings being easements over the right of way, and not constituting any part of the fence, like gates or bars, ought not to be included in such an instruction, as the statute has not given the land-owner any remedy to compel their erection and maintenance.

4. SAME—*measure of damages.* In condemning land for railroad purposes it is hardly practicable to state any inflexible rule for estimating damages to the land owner. The amount should be sufficient to cover all the actual damages sustained by reason of the construction of the road, the land taken, for all physical injuries to the residue, and for all inconveniences of every character actually produced, but nothing should be

Opinion of the Court.

allowed for imaginary or speculative damages, or such remote and inappreciable damages as may be imagined but may never occur.

5. SAME—*damages from danger by fire.* Damage from fire resulting from the use of steam as a motive power, in most cases, may be reckoned among the imaginary dangers that may or may not occur, and if they do, the law affords a speedy and effectual remedy. But if the road is constructed so near the owner's buildings as that the danger from fire is real, it may constitute an element of increased damages.

6. SAME—*evidence as to value of land.* Where, on the assessment of damages for right of way, the land-owner introduced in evidence the deeds for his land, it was held no ground for reversal to instruct the jury, on the part of the petitioner, that they could take into account the consideration recited in the deeds in determining the value of the land taken. If the lands had been recently purchased, the price paid might tend to enlighten the jury upon that issue.

7. INSTRUCTION—*when errors in, no cause of reversal.* When, from the whole record, the court can see that justice has been done, it will not reverse a judgment for mere trivial errors in the phraseology of instructions.

APPEAL from the Circuit Court of Ogle county; the Hon. WILLIAM W. HEATON, Judge, presiding.

The jury assessed the defendant's damages at $500, and he, not being satisfied, brings the case to this court on appeal.

Messrs. EDSALL & BARDWELL, for the appellant.

Mr. J. H. CARTWRIGHT, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This proceeding was instituted in 1870, by the Chicago and Iowa Railroad Company, to condemn the right of way over certain lands, alleged to be owned by appellant, but no trial was had in the circuit court until the April term, 1873. The strip of land sought to be condemned is accurately described in the petition, and is a part of a certain eighty-acre tract. The evidence shows appellant owned other lands abutting the tract on which the railroad is constructed, but the court very properly instructed the jury they could only

allow for damages occasioned to that described in the petition. Had appellant desired to have the damages assessed for injuries sustained to contiguous lands owned by him, he ought to have filed a cross-petition. In *Mix* v. *Lafayette, Bloomington and Miss. R. R.* 67 Ill. 319, it was decided it was necessary for complainant to file a cross-petition alleging he was the owner of lands, not described in the petition, that were injured by the construction of the railroad, before he could be permitted to offer evidence of that fact. This was not done, and the inquiry as to damages sustained was properly confined to lands described in the original petition. No other issue was presented in the pleadings.

It is insisted, as a ground of reversal, the court erred in giving the first instruction for appellee. By it the jury were told, as a matter of law, the company was "bound to maintain and erect fences suitable and sufficient to prevent cattle, horses, sheep and hogs from getting on their said road, with openings or gates or bars at farm crossings of said railroad, for the use of the proprietors of the lands adjoining the same, and the jury in this case have no right, in estimating the compensation to the defendant Jones, to take into consideration any loss, inconvenience or damage resulting from the failure of the petitioner to maintain such fence or farm crossings."

The act of 1855 makes it the duty of every railroad company whose line of road has been open for use six months, to inclose the same with a fence suitable and sufficient to prevent stock from getting upon the track, except in cases where the adjoining land-owner has received a compensation from the company for erecting and maintaining such fences. The act of 1869 has given the land-owner a remedy to enforce the duty imposed by the former law, so that the statute now affords the owner a complete remedy for any loss, inconvenience or danger resulting from a failure to erect and maintain the necessary fences.

Appellee's road had been open for use more than six months prior to the trial, and, from the manner in which it was conducted, we should infer the company had previously erected fences on either side of its road, as required by law. No complaint is made that the company had not erected the necessary fences, and no proof was offered on that question. On the theory the company had previously constructed the necessary fences, there was no error in the court instructing the jury not to consider the failure to maintain them as an element of damage in making up their verdict. In case of failure, at any future period, to maintain the fences, the law affords the owner an adequate remedy.

The court ought not, however, to have included "farm crossings." They are very different from openings, gates or bars at farm crossings, which constitute a part of the fence itself. Farm crossings proper are easements over the track of the road. The statute has given no remedy to compel the erection and maintenance of farm crossings. Notwithstanding this error, we think the meaning of the instruction is rendered so plain by the context that it could by no possibility have misled the jury.

Objection is taken to the third instruction for the appellee. In substance, it tells the jury the company was bound to use the best engines, equipped with the most improved contrivances to prevent the escape of fire, and consequent damage or loss resulting therefrom; that for neglect in that regard the company would be responsible, and they should not consider any loss or damage arising from such neglect, in coming to a conclusion.

Investigations like this necessarily embrace a wide range of subjects, and it is hardly practicable to state any inflexible rule for estimating the damages to the land-owner. The amount allowed should be sufficient to cover all the actual damage occasioned by reason of the construction of the road, for the land taken, for all physical injuries to the residue, and for all inconveniences of every character actually produced,

but nothing should be allowed for imaginary or speculative damages, or such remote or inappreciable damages as the imagination may conjure up, and which may or may not occur in all the future. The increased hazard from fire resulting from the use of steam as a motive power, in most cases, may be reckoned among the imaginary dangers that may or may not occur; and in case they do, the law affords a speedy and effectual remedy. No doubt, if the road was constructed so near the owner's buildings as that the danger from fire would be real, it would be an element of increased damage, but where the buildings are at such a distance that the danger is not real, but amounts to nothing more than a mere apprehension, the rule is different. It is not shown the dangers from the location of the road are so real as to be a constant exposure. No such facts appear, and hence the instruction was not erroneous in this case.

Appellant introduced in evidence the deeds for his lands, and the court, at the instance of appellee, instructed the jury they could take into consideration, for the purpose of determining in their own minds the value of the lands, the consideration mentioned in the several deeds.

Clearly, the jury had the right to consider all the evidence offered, which in any degree tended to elucidate the question of the value of the land taken, however slight it might be. Had it appeared that the purchases had been recently made, the consideration stated might tend to enlighten that issue, and certainly there was no grave error, such as ought to be a ground for reversal of a judgment, in permitting the jury to consider it in connection with the other evidence in the case. This was all the court directed them to do. Upon the whole record, we are satisfied justice has been done, and if it should be shown that some trivial errors appear in the phraseology of the instructions, we would not for that reason alone reverse the judgment. The instructions in the main are correct, and were such as the nature of the case required. The evidence as to the damages sustained by appellant is quite conflicting,

and we are unable to say the jury found incorrectly. We are the better satisfied with the verdict, for the reason the jury were afforded every opportunity to be fully advised as to the damages really sustained. They were permitted to go upon the premises and make an examination of the ground for themselves. The road had then been constructed, and they could determine with great propriety what injury had been done, from a personal inspection of the work. The evidence preserved in the record affords us no reason to be dissatisfied with the conclusion reached.

We are unable to discover any error in the record prejudicial to appellant, and the judgment is accordingly affirmed.

*Judgment affirmed.*