THE PEORIA AND PEKIN UNION RAILWAY COMPANY *et al.*

*v.*

THE PEORIA AND FARMINGTON RAILWAY COMPANY.

*Filed at Ottawa November 20, 1882.*

1.  APPEAL—*lies directly to this court in proceeding to condemn.* By section 12 of the Eminent Domain act, an appeal is expressly given directly to this court from the judgment of the trial court, in a proceeding to condemn land for right of way, and there is nothing in the Practice act that takes away this right.

2.  CORPORATE EXISTENCE—*proof thereof in a collateral proceeding.* The general rule is, that in all collateral proceedings at the suit of an alleged corporation, the introduction of the charter of the company, and proof that the company is exercising the franchises granted, afford sufficient evidence upon the question of the corporate existence of the company. In such case it is not required to show that the company is a corporation *de jure.*

3.  SAME—*what is a collateral proceeding.* A proceeding for the condemnation of the right of way for a railroad is a collateral proceeding, so far as concerns the question of the corporate existence of the company seeking the condemnation.

4.  SAME—*former decision.* In this case a railroad company sought to condemn a right of way, under the Eminent Domain act. As proof of its corporate existence the company gave in evidence the special charter under which it claimed to have been organized, and also gave evidence of user of the franchises granted by the charter. This was held sufficient to authorize the proceeding.

5.  But it was contended the case of *Allman* v. *Havana, Rantoul and Eastern R. R. Co.* 88 Ill. 521, holds a different doctrine; that in that case it was held, in a suit on a subscription for stock to the company, the defendant could interpose as a defence that the requisite amount of stock had not been subscribed to authorize the company to collect assessments on subscriptions. That decision was under the general Railroad law, and this is under a special charter.  It was considered, if this does not distinguish that case from this, then the former must be limited to cases arising under the general Railroad law, or must be overruled, as the court, on more mature reflection, are convinced it is repugnant to the general doctrine applicable to cases like the present.

6.  EMINENT DOMAIN—*elements of damage—right of way for railroad across the track of another railroad.*  The law requiring railroad trains to stop before crossing another railroad, being a mere police regulation, and subject to repeal at any time, the damages sustained by a railroad company for the delay, inconvenience and trouble in stopping before crossing another road seeking a condemnation for right of way across the track of an existing railroad, are too vague, indefinite and contingent to be an element in the assessment of damages in favor of the road to be so crossed.

7.  Nor is the increased danger arising from the crossing of the track of one railroad by the trains of another, to be considered as an element of damage in such proceeding.  To allow damages on such a claim would violate the rule that they can not be allowed on mere conjecture, speculation, fancy or imagination,—they must be real, tangible and proximate.

8.  SAME—*former decision.*  Nor is this rule in conflict with what was said in *Lake Shore and Michigan Southern R. R. Co.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 21, where it was held that only such injury and inconvenience as reduce the capacity of the corporation to transact its business, and necessarily result in damage and loss, are elements of damage.

9.  SAME—*generally.*  Direct and immediate damages alone are recoverable in this class of cases, and remote or merely incidental damages can not be considered.  It is that injury which depreciates the value of the property, whether by taking a portion of it or rendering the portion left less useful, or, in case of a railroad company or other corporate body, less capable of transacting its business,—such a hindrance and inconvenience as to occasion loss, or diminish and limit its capacity to transact its business by decreasing the power to transact as much, or necessarily increasing the expense of what may be done, although not diminished; and this hindrance must produce immediate or future loss.  If the new structure, when made, does not necessarily abridge the owner's capacity without increased expense to transact an equal volume of business, then, although there may be inconvenience and annoyance, unless the property is depreciated in value these are not elements of damage.

10. SAME—*damages to elevator.* Where an elevator used for the deposit of grain stands on ground considerably above and some distance from a river upon which grain was carried from the elevator, and it appearing that the grain was transferred from the elevator to boats at the wharf through an inclined chute or tube, called a "conductor," and that a railroad for which a condemnation was sought was proposed to be located between the elevator and the river, and was to be constructed on trestles, and elevated entirely above the chute or conductor, so as not to interfere with the transferring of grain from the elevator to the river, it was *held,* there was no loss to the owner of the elevator, and therefore could be no damage.

11. SAME—*plans of road as evidence.* In a proceeding to condemn a right of way for a railroad over a strip of land between an elevator and a river, the plans by which the company proposes to build the road, as showing the track is to be laid upon trestles elevated so high as not to interfere with the transfer of grain from the elevator to the river in chutes or conductors, are admissible in evidence on the question of damages and compensation claimed.

12. SAME—*nominal damages.* In the assessment of damages for the taking of property for the right of way, the amount of the damage must be shown,—not necessarily with precision, but approximately. If damage is shown, but the amount is not approximately made to appear, no more than nominal damages can be allowed.

13. EVIDENCE—*weight of.* In the assessment of damages for a right of way, the jury will be warranted in giving but slight, if any, weight to the evidence of mere experts, based simply on theory and conjecture, as to the damage the construction of a railroad between an elevator and river would be to the owners of the elevator.

14. ERROR *will not always reverse—improper instruction to jury.* An instruction stating a mere abstract legal proposition having no application to the evidence, though not announcing a correct rule of law, is not such an error as to call for a reversal, when the court can see that it could not have operated to the prejudice of the other party, or have misled the jury.

APPEAL from the County Court of Peoria county; the Hon. JOHN C. YATES, Judge, presiding.

Messrs. STEVENS & LEE, and Mr. JOHN B. COHN, for the appellants:

The petitioner failed to prove its corporate existence. That such proof was necessary, see *Allman* v. *Havana, Rantoul and Eastern R. R. Co.* 88 Ill. 521.

The court erred in giving appellee's eighteenth instruction, telling the jury that as against damages to defendants' road

or property, aside from that taken, they might offset benefits to the entire property. *Keithsburg and Eastern R. R. Co.* v. *Henry,* 79 Ill. 290.

The court also erred in charging the jury that the defendants could recover no damages by reason of being compelled, in accordance with the statute, to stop their trains at the proposed crossing, and that no damages could be awarded by reason of any annoyance, damage, delay or expense caused by being compelled to stop, or for the increased danger of collisions. *Lake Shore and Michigan Southern Ry. Co. et al.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 21.

Messrs. WORTHINGTON & PAGE, for the appellee:

This court has no jurisdiction of this appeal. Jurisdiction of subject matter can not be conferred by consent. *Dunn* v. *Rogers,* 4 Gilm. 131; *Randolph County* v. *Ralls,* 18 Ill. 29; *Leigh* v. *Mason,* 1 Scam. 249; *Peak* v. *People,* 71 Ill. 278.

The expense of stopping and starting appellants' trains is not a proper element of damages. The crossing does not compel them to stop their trains, but the State law does. This law is a mere police regulation, liable to repeal or modification at any session of the General Assembly. *Lake Shore and Michigan Southern R. R. Co.* v. *Cincinnati, Sandusky and Cleveland R. R. Co.* 30 Ohio St. 604; *Boston R. R. Co.* v. *Old Colony R. R. Co.* 3 Allen, 142; *Old Colony R. R. Co.* v. *Plymouth,* 14 Gray, 115; *Massachusetts R. R. Co.* v. *Boston R. R. Co.* 121 Mass. 124; *Boston R. R. Co.* v. *Old Colony R. R. Co.* 12 Cush. 605; *Eastern R. R. Co.* v. *Boston R. R. Co.* 111 Mass. 125.

The damages from the increased danger of collisions in consequence of a crossing, are too conjectural, speculative and uncertain. *Jones* v. *Chicago and Rock Island R. R. Co.* 68 Ill. 380; *Eberhart* v. *Chicago, Milwaukee and St. Paul R. R. Co.* 70 id. 347; *Page* v. *Chicago, Milwaukee and St. Paul*

R. R. Co. id. 324; *Slater* v. *Burlington and Mt. Pleasant Plank Road Co.* 1 Iowa, 393; *Henry* v. *Dubuque R. R. Co.* 2 id. 300.

The true test upon the question of damages is, how is the market value of the whole affected? If it is not decreased beyond the actual value' of the part taken, there is no present pecuniary damage. *Page* v.· *Chicago, Milwaukee and St. Paul R. R. Co.* 70 Ill. 324; *Haslam* v. *Galena and Southwestern R. R. Co.* 64 id. 353; *Eberhart* v. *Chicago, Milwaukee and St. Paul R. R. Co.* 70 id. 347; *Edmunds* v. *Boston,* 108 Mass. 544; *Searle* v. *L. and B. R. R. Co.* 63 Pa. St. 93; *Park Comrs.* v. *Dunlevy,* 91 Ill. 49; *Lafayette R. R. Co.* v. *Winslow,* 66 id. 219.

It was competent to give in evidence the plans of the road, in order to show there would be no obstruction to the use of the elevator. *Jacksonville and Havana R. R. Co.* v. *Kidder,* 21 Ill. 131; *St. Louis, J. and C. R. R. Co.* v. *Mitchell,* 47 id. 165; *Peoria and Rock Island R. R. Co.* v. *Birkett,* 62 id. 332; *City of Elgin* v. *Eaton,* 83 id. 535; *Hyde Park* v. *Andrews,* 87 id. 229.

The same rule governs here as in condemnation by a telegraph line. The fee is not taken, and only an easement for the purposes for which condemnation is sought. *Lockie* v. *Mutual Union Tel. Co.* 103 Ill. 401.

Proof that petitioner is a *de facto* corporation is all that is required. *McAuley* v. *Columbus, Chicago and Indiana Central Ry. Co.* 83 Ill. 348.

The introduction of the charter and proof of user are sufficient to prove the existence of a corporation under the plea of *nul tiel corporation,* when the corporation is collaterally attacked. *Mendota* v. *Thomson,* 21 Ill. 197; *Hamilton* v. *Carthage,* 24 ·id. 22; *Tisdale* v. *Town of Minonk,* 46 id. 9; *Mitchell* v. *Deeds,* 49 id. 416; *Kettering* v. *Jacksonville,* 50 id. 39; *Meeker* v. *Chicago Cast Steel Co.* 84 id. 276; *Utica Ins. Co.* v. *Tilman,* 1 Wend. 555; *Graves* v. *Bank of Mississippi,*

7 Eng. (Ark.) 769; *Bank of Manchester* v. *Allen,* 11 Vt. 302; *Reynolds* v. *Myers,* 51 id. 44.

It is a general rule that the existence *de jure* of a corporation acting as such can not be questioned collaterally. *State* v. *Carr,* 5 N. H. 367; *Thompson* v. *Candor,* 60 Ill. 244; *Rice* v. *R. I. and A. R. R. Co.* 21 id. 93; *Tarbell* v. *Page,* 24 id. 46; *Baker* v. *Backus, Admr.* 32 id. 79.

Mr. Justice Walker delivered the opinion of the Court:

Appellee, the Peoria and Farmington Railway Company, filed petitions for the purpose of procuring the right of way across the tracks and grounds of the Peoria and Pekin railway, and two other companies. The cases were consolidated, and tried as one by the court and a jury. A verdict was found for $1800 damages. A motion for a new trial was entered, overruled, and an order entered under the statute. The defendants thereupon bring the case to this court by appeal, and seek a reversal.

The first question presented and urged is, that this court has no jurisdiction to hear the case; that the appeal should have been taken to the Appellate Court; that there is neither a freehold nor a franchise involved; that the condemnation only confers an easement to use the property condemned for corporate purposes during the existence of the corporate body; that when the body ceases to exist the easement terminates. In answer to this objection it is only necessary to refer to the 12th section of the Eminent Domain act, which in express terms gives an appeal; and in the case of *Kankakee and Seneca R. R. Co.* v. *Straut,* 101 Ill. 653, it was held that nothing in the Practice act has taken away the appeal to this court, as given by that section. That disposes of this objection.

It is next insisted that the petitioning company failed to prove a regular and legal organization under its charter. It obtained its charter in March, 1869, and it is insisted it was

required to prove that it had complied with all the requirements of its charter within the period limited by section 2 of article 11 of our constitution, which provides that all charters then existing under which an organization shall take place, or shall not be in operation within ten days from the time the constitution took effect, should thereafter have no validity or effect whatever; that inasmuch as the charter of appellee was granted before that time, it should have been shown that an organization was had within the time thus limited,—in other words, that appellee was a corporation *de jure*. On the other hand it is claimed that under the plea of *nul tiel corporation* the proof of a corporation *de facto* answers the plea. The general rule is, that in all collateral proceedings the introduction of the charter, and proof that the company is exercising the franchises granted, are sufficient. The evidence in this case was therefore sufficient to authorize petitioner to proceed to condemn the right of way.

But it is said that this is not a collateral proceeding. This is a misconception. The suit was brought to acquire the right of way on which to place the company's tracks. It is true this was an exercise of a franchise contained in the charter, and the same is true when the company sues on a contract, or for a trespass to its property. The right to sue and defend suits is a franchise conferred by the charter.

It is, however, urged that the case of *Allman* v. *Havana, Rantoul and Eastern R. R. Co.* 88 Ill. 521, holds a different doctrine; that in that case it was held, in a suit on a subscription for stock to the company, the defendant could interpose as a defence that the requisite amount of stock had not been subscribed to authorize the company to collect assessments on subscriptions. That decision was under the general Railroad law, and this is under a special charter. This special charter, by the fifth section, fixes the amount of capital, and authorizes an organization when $10,000 is subscribed and ten per cent is paid in, whilst under the general law an organ-

ization can not be had until the whole of the capital stock is subscribed.   If this does not distinguish that case from this, it must be limited to cases arising under the general Railroad law, or must be overruled, as on more mature reflection we are convinced it is repugnant to the general doctrine applicable to cases like the present.   There was, in addition to the charter, evidence of user of the franchises granted by the charter, and that was sufficient to authorize this proceeding.

It is insisted that the court erred in giving appellee's instructions.   This is appellee's sixth instruction:

"The court instructs you that respondent railway companies can not recover any damages against the petitioner in this case on account of having to stop and start their respective trains at the proposed crossings of the different railroad tracks, in order to comply with the law of the State, and the jury will find no damages against the petitioner on account of any annoyance, damage, delay or expense caused simply by so being compelled by law to stop before passing any of the proposed crossings."

Appellants claim that this instruction misstates the law, and the jury were misled by it.   The law requiring trains to stop before reaching and crossing another road, is a police regulation, and may be maintained or repealed at the pleasure of the legislature.   No one can say it is permanent, or how long it may continue.   It is subject to repeal at any session of the General Assembly.   It would therefore be mere matter of conjecture as to what, if any, damages would be sustained by appellants for the delay, inconvenience and trouble produced by complying with the requirements of the statute.   Independent of the statute the same duty would be imposed, and it is too vague and uncertain to be an element of damages.   *Lake Shore and Michigan Southern R. R. Co.* v. *Cincinnati, Sandusky and Cleveland R. R. Co.* 30 Ohio, 604; *Boston R. R. Co.* v. *Old Colony R. R. Co.* 3 Allen, 142; *Old*

*Colony R. R. Co.* v. *Plymouth R. R. Co.* 14 Gray, 155; *Massachusetts R. R. Co.* v. *Boston R. R. Co.* 121 Mass. 124; *Boston R. R. Co.* v. *Old Colony R. R. Co.* 12 Cush. 605. There was, therefore, no error in giving this instruction, as it embraced the law as applicable to the case. What has been said in reference to appellee's sixth instruction applies to its seventeenth instruction, and disposes of the objections urged against it.

It is claimed that the court erred in excluding as an element of damages the increased danger of crossing appellants' road on grade, by its sixteenth instruction. If this would increase the danger, it would require increased care and precaution of the employés of the company necessary to avoid it. Accidents can be avoided by proper care. Nor are we warranted in presuming the employés would be negligent of their duty. If they observe their duty, a collision need never occur. To allow damages on this claim would violate the rule that they can not be allowed on mere conjecture, speculation, fancy or imagination,—they must be real, tangible and proximate. Nor is this rule in conflict with what was said in *Lake Shore and Michigan Southern R. R. Co.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 21. In that case it was held that only such injury and inconvenience as reduce the capacity of the corporation to transact its business, and necessarily result in damage and loss, are elements of damages. But nothing should be allowed for imaginary and speculative damages, or such remote or inappreciable damages as the imagination may conceive. The doctrines of that case then, do not condemn the sixteenth instruction, nor do they condemn the seventeenth.

Direct and immediate damages are alone recoverable in this class of cases, and remote or mere incidental damages can not be considered. It is that injury which depreciates the value of the property, whether by taking a portion of it or rendering the portion left less useful, or, in case of a railroad company or other corporate body, less capable of trans-

acting its business,—such a hindrance and inconvenience as to occasion loss, or diminish and limit its capacity to transact its business, by decreasing the power to transact as much, or necessarily increasing the expense of what may be done, although not diminished. And this hindrance or obstruction must produce immediate or future loss. But when the new structure is made, if it does not necessarily abridge the owner's capacity without increased expense to transact an equal volume of business, then, although there may be inconvenience and annoyance, unless the property is depreciated in value these are not elements of damage.

It is insisted that the appellee's eighteenth instruction is vicious. It informs the jury that as against the damages to appellants' road or property, aside from that taken, the jury might set off benefits to the entire property; and if they found it to be damaged, yet if they found that the construction and operation of the road would produce benefits equal to or in excess of the damages, then they should not find damages in favor of appellants, except compensation for the property actually taken,—and the case of *Keithsburg and Eastern R. R. Co.* v. *Henry,* 79 Ill. 290, is referred to as condemning this instruction. Conceding that to be true, still in this case there was, it is conceded, no evidence on which to base this instruction. It was a mere abstract legal proposition, having no application whatever to the evidence in the case. This being true, we are unable to say it operated in the slightest degree to the prejudice of appellants. Had there been such evidence, the instruction would have been calculated to mislead the jury, and might have required a reversal; but so far as we can see, it was harmless. In such case it must appear or be highly probable that such an instruction has produced injury to appellants, before a reversal will be had.

It is claimed that the court erred in giving the fifth of appellee's instructions. It informs the jury that the con-

demnation of the strip across the property on which elevator "A" is situated, will not deprive the owner of the use of the elevator as at present constructed and used, and that the jury should not allow any damages for depriving its owner of the use of the conveyer of grain from the warehouse. The evidence shows that this elevator stands on ground considerably above and some distance from the river; that in transferring grain from the elevator to boats at the wharf, an inclined chute or tube, called a "conductor," is used for the purpose. It also appears, from the evidence and plans for the construction of the track of the road across this lot, that the track will be on trestles, and elevated entirely above the chute, and will not, in the slightest degree, interfere with its operation, or with others that may be constructed in like manner. This being the case, there can be no pretense that appellants should be paid damages for injuries that are not or can be sustained. If there is no loss there is no damage.

But it is urged that appellee could not condemn the property to be used in common with the owner of the elevator. It is, however, conceded that the right of way across a railroad track may be condemned, and used in common by both roads; and why not land on which an elevator is situated, when the road and chute from the elevator are not on the same level, and each may be used for its several purposes at the same time, as completely as if the other was not there? Appellee only desired to obtain the use of so much, and in such a manner, as would answer the purposes of its business, and to injure the owner of the elevator property as little as practicable. The law would not permit appellee to unnecessarily injure the owner of property thus appropriated, whether owned by a natural person or a corporate body, nor can the owner recover for damages that have not and will not be sustained.

But it is urged that this only appears from the plans on which appellee proposes to construct its track over this strip

of ground, and that the plans may be altered, and therefore should not have been admitted in evidence. Such evidence has been held to be admissible in a number of cases: *Jacksonville and Savanna R. R. Co.* v. *Kidder*, 21 Ill. 131; *St. Louis, J. and C. R. R. Co.* v. *Mitchell*, 47 id. 165; *Peoria and Rock Island R. R. Co.* v. *Birkett*, 62 id. 332; *City of Elgin* v. *Eaton*, 83 id. 535; *Hyde Park* v. *Andrews*, 87 id. 229. Under these authorities the evidence was admissible.

It is urged that the court erred in instructing the jury that if the evidence showed there was damage, but they were unable to ascertain the amount, then they should find for such damages a nominal sum. We perceive no objection to this, as a legal proposition. In this class of cases there is a rule by which to measure the damages. It is the loss sustained in dollars and cents, and the amount of the loss must be shown, together with its amount,—not necessarily with precision and accuracy, but approximately; and if damage is shown, but the amount is not approximately proved, there can be no more than nominal damages allowed.

It is claimed that under the evidence the finding was outrageously low. This would no doubt be true if the evidence of appellants' witnesses were alone considered, especially of those called as experts. Their evidence, based on mere theory that did not stand the test of demonstration by actual experiment, placed the damages at vastly more than the jury allowed. The jury were fully warranted in giving but slight, if any, weight to their evidence, as it was based simply on theory and conjecture.

It is insisted that the jury did not even allow the value of the strip taken. The evidence, as it always is, was conflicting as to the value of the land. That the land higher up, and above high water mark, was greatly more valuable, is certainly true; but this strip was between high and low water mark, and was therefore of comparatively little value. Men of experience and good judgment placed its value at much

less than the jury probably allowed for it. The entire evidence considered, we are unable to say the verdict is contrary to the evidence, especially as the jury went upon and viewed the premises.

The entire record considered, we perceive no error for which the judgment of the court below should be reversed, and it is therefore affirmed.

*Judgment affirmed.*