The Chicago, Burlington and Northern Railroad Company

*v.*

Alice Bowman *et al.*

*Filed at Ottawa November 11, 1887.*

1. Costs—*witness fees to be taxed—limiting number of witnesses—in proceedings under Eminent Domain act.* The general Cost act applies to proceedings to condemn land under the Eminent Domain act, and under it the court may, after the conclusion of the evidence, limit the number of witnesses whose fees are to be taxed against any party, not less than two, as may appear to have been necessary.

2. Same—*time of application to limit number of witnesses whose fees may be taxed—and how far discretionary.* A motion to limit the number of witnesses called by a defendant, whose fees are to be taxed against the

122 595 | 125 396

122 595 | 126 120

122 595 | 134 15

122 595 | 136 14 | 136 472

122 595 | 41a 590

122 595 | 147 389

122 595 | 150 378 | 152 252 | 44a 399

122 595 | 71a 572

122 595 | 81a 609

122 595 | 91a 9 26

122 595 | 93a 3417

122 595 | 193 6471 | 193 5475

122 595 | 194 6579

plaintiff, made before the defendant has examined his witnesses, is premature, and therefore properly overruled.

3.   There is no inhibition upon parties calling as many witnesses as they may desire; but every party must assume the risk of having taxed against him the fees of all such witnesses as the court may find were unnecessary, being not less than two.   A motion to restrict a party to a certain number of witnesses whose fees may be taxed as costs, is addressed to the discretion of the trial court, and its decision is not subject to review, except where the discretion is abused.

4.   Eminent domain—*measure of damages—as to land taken*.   The fair market value of land proposed to be taken for public use under the Eminent Domain act, having proper regard to the location and advantages as to situation and the purposes for which it was designed and used, is the proper measure of compensation to be awarded.

5.   Where a part is taken, and that part has a greater value, in connection with the whole, than as a separate parcel, the measure of damages will be the fair cash value of the part taken, as a part of the whole.

6.   Same—*measure of damages—as to part not taken*.   Where a cross-petition is filed for damages to land not sought to be taken, but a part of that sought to be condemned, the jury should award to the owner such damages, in cash, as his lands not taken will sustain, if any, by reason of the construction of the proposed railroad, and its continued use and operation, through his farm.   In such case it is proper for the jury to give damages for all actual and appreciable injuries resulting from the construction and operation of the proposed railroad.

7.   If the lands not taken will be depreciated in value by the construction and operation of the proposed railroad, the measure of damages will be the difference in their market value before the construction of the road and after its construction.   In determining this, the jury may consider the injury to the land arising from inconveniences actually brought about by the construction of the proposed railroad, or incidentally produced by dividing the land as to water, pastures and improvements, although such injury may not be susceptible of definite ascertainment, and also for such incidental injury as would result from the perpetual use of the track for moving trains, or from danger of killing stock, or injury to pasturing stock, or escape of fire, and generally for such damages as are reasonably probable to ensue from the construction and operation of the proposed road.

8.   The physical condition of land over which a right of way is sought to be condemned for a railroad, whether affected by another railroad, a water-course, or other natural or artificial object, must be considered in the proceeding,—not in respect to the damage or depreciation caused by such other railroad, water-course, etc., but for the purpose of determining the damages occasioned to the owner by the proposed improvement.

9. Same—*proximate and remote damages.* While it is true that only real, tangible and proximate damages are recoverable, yet it is all such damages as are reasonably probable, as distinguished from possible, speculative or remote damages, that form the proper basis of recovery.

10. Same—*of an instruction—whether permitting remote or speculative damages.* An instruction that the land owner is entitled to just compensation for the land taken, and for all "reasonable and probable damage" to the balance of his land not taken, caused by taking the strip condemned for the uses and purposes of the proposed railroad, is not obnoxious to the objection that it opens the door to let in remote, conjectural and speculative damages.

11. Bill of exceptions—*when necessary.* Affidavits filed in a cause do not become a part of the record sent up on appeal or error, unless made so by being incorporated into a bill of exceptions.

Appeal from the County Court of Carroll county; the Hon. B. L. Patch, Judge, presiding.

Mr. James Shaw, and Mr. D. S. Berry, for the appellant:

The court should have sustained appellant's motion to limit appellee's witnesses. Appellant examined only eight witnesses, while appellee examined nineteen, and kept in attendance nine more. The court should have required appellee to pay a part of the costs.

The court may limit the fees to be taxed when the privilege of calling witnesses has been abused, and when the trial court fails to exercise its discretion this court may compel it. *Stock Yards Co.* v. *Moore,* 5 Am. and Eng. Ry. Cas. 351; *Firman* v. *Firman,* 109 Ill. 63.

In estimating compensation and damages in railroad condemnation cases, it is improper to consider imaginary or speculative damages, or remote and improbable consequential damages, which may or may not happen in the future, or such damages as result from future wrongful acts, which afford proper causes of action when they occur. Of this kind of damages are supposed dangers of future fires; frightening stock in pastures, or killing them on the track; flooding meadows, or serious interference with the after-flow of surface waters; noises and smoke

in the running of trains over remote farm lands, and inconveniences suffered from other railroads being operated over the same land; or to build fences or farm crossings. *Stone* v. *Railroad Co.* 68 Ill. 394; *Jones* v. *Railroad Co.* id. 380; *Railroad Co.* v. *Burket,* 46 Ala. (N. S.) 569; 1 Redfield on Railways, 358, par. 11; *McReynolds* v. *Railroad Co.* 106 Ill. 152; *Railroad Co.* v. *Francis,* 70 id. 238; Mills on Eminent Domain, 193.

As to the rule of assessing damages where one railroad is upon the farm, or where one railroad runs along the side of another, see Mills on Eminent Domain, 167; 17 Minn. 322; 13 N. Y. 149.

The unwillingness of the owner to part with his property, nor the necessities of the condemning corporation, nor the adaptation of the land to the purposes of the railroad, nor what the land would be worth to the witnesses in the shape taken, are proper elements for the consideration of the jury. Pierce on Railways, 213; Mills on Eminent Domain, 168.

The court erred in instructing that the jury might allow all probable damages. *Railroad Co.* v. *Railroad Co.* 105 Ill. 110; *Reynolds* v. *Railway Co.* 106 id. 152; *Jones* v. *Railroad Co.* 68 id. 380.

Mr. J. M. Hunter, for the appellees, argued the case at some length on the evidence.

Mr. Justice Shope delivered the opinion of the Court:

This was a proceeding by the appellant company, in the county court of Carroll county, to condemn the right of way across the land of three separate owners. Three separate trials were awarded,—the cause arising on the petition and the cross-petition of appellee Alice Bowman being first tried. Appellant called eight witnesses, and on its application the jury were sent to view the premises, and appellant then rested.

Before appellee had offered any evidence, appellant moved the court to limit the number of witnesses called and in attendance upon behalf of appellee, whose fees were to be taxed against appellant, to such number,—not less than two,—as should appear to the court to be necessary for the proper trial of the issues involved, which motion the court overruled. This ruling is assigned for error.

The act under which this proceeding is conducted makes no provision respecting costs, and the general Cost act applies. Section 15 of the chapter on costs reads: "The court may limit the number of witnesses whose fees are to be taxed against any party, to such number, not less than two, as shall appear to the court to have been necessary." There is no inhibition upon parties calling as many witnesses as they may desire, but every party must assume the risk of having taxed against him the fees of all such witnesses as the court may find were unnecessary. This court so held under a former statute limiting the number of taxable witnesses to four, unless the court certified that a greater number were necessary. *White* v. *Hermann*, 51 Ill. 243.

The question here presented relates more particularly, however, to the time when such application should be made, and when the court can properly be called upon to act. Holding the affirmative, appellant's witnesses were heard first, and this hearing ran into the fourth day of the trial, and appellee, with her witnesses, must perforce wait till appellant concluded. Before a single witness of appellee had been or could have been heard, appellant made this motion. How the court, in advance, could exercise its discretionary power of determining what witnesses were or were not necessary to the maintenance of appellee's case, is not apparent. At the conclusion of the trial the court could act upon such a motion intelligently and fairly, but surely it could not do so before it had heard the witnesses. The motion was premature, and was therefore properly denied. But if this motion had been made or renewed at the conclusion

·of the testimony, its allowance or disallowance, resting in the sound discretion of the trial judge, would not be the subject of review unless such discretion had been abused.   The facts of this case were complicated, and the twenty-one witnesses called by appellee were, as it seems to us, fairly distributed, upon the several inquiries properly made, and under the circumstances of this case we are unable to say there was any abuse of discretion in denying the motion.

It is also contended that appellee kept in attendance eight witnesses who were not sworn, and that the fees of these witnesses were wrongfully taxed against appellant.   There is in the record a conditional judgment against appellant for $3950 and "the costs of this proceeding," but the record does not show the amount of costs taxed, nor the items going to make up the bill of costs.   We can not know, therefore, whether fees of attending witnesses not sworn have been taxed or not.   There are a number of affidavits of witnesses claiming attendance, but they form no part of the record properly certified to this court.   If appellant desired to make them a part of the record it should have procured them to be incorporated into the bill of exceptions, for in this way, only, can affidavits filed in a case become a part of the record.

It is further contended that the damages found by the jury were excessive and unjust, and largely made up of improper elements.   In reaching their determination it was competent for the jury to award appellee compensation, in dollars and cents, for the fair market value of the land proposed to be taken, having proper regard to the location and advantages as to situation, and the purposes for which it was designed and used.   *Jacksonville and Southeastern Railway Co.* v. *Walsh*, 106 Ill. 253 ; *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 id. 589 ; *Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 id. 97 ; *Chicago and Evanston Railroad Co.* v. *Jacobs*, 110 id. 414 ; *DeBuol* v. *Freeport and Mississippi River Railroad Co.* 111 id. 499.   And where but

a part is taken, and the part taken is of greater value, in connection with the whole, than as a separate parcel, the measure of damages will be the fair cash value of the part taken, as a part of the whole. (*Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163.) Under appellee's cross-petition it was the duty of the jury to award to appellee such damages, in dollars and cents, as her lands not taken would sustain, if any, by reason of the construction of the proposed railroad, and its continued use and operation through her farm. It was competent for the jury to consider and give compensation for all actual and appreciable injuries resulting from the construction and operation of the proposed railroad. (*Alton and Sangamon Railroad Co.* v. *Carpenter,* 14 Ill. 190.) And if the lands not taken would be depreciated in value by the construction and operation of the proposed railroad, the measure of damages would be the difference in their market value before the construction of the road and after its construction. *Chicago and Pacific Railroad Co.* v. *Francis,* 70 Ill. 238; *Page* v. *Chicago, Milwaukee and St. Paul Railway Co.* id. 324; *Eberhart* v. *Chicago, Milwaukee and St. Paul Railway Co.* id. 347; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hall,* 90 id. 42; *Dupuis* v. *Chicago and North Wisconsin Railway Co. supra.* In determining this, the jury would be justified in considering the injury to her land arising from inconveniences actually brought about and occasioned by the construction of the proposed railroad, or incidentally produced by dividing her land as to water, pastures and improvements, although such injury and damage might not be susceptible of definite ascertainment. *Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380; *Rockford, Rock Island and St. Louis Railroad Co.* v. *McKinley,* 64 id. 338; *McReynolds* v. *Burlington and Ohio River Railway Co.* 106 id. 152; *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 id. 316. And for such incidental injury as would result from the perpetual use of the track for moving trains, or from danger of killing stock, or injury to pasturing stock, or escape of fire,

and generally for such damages as are reasonably probable to ensue from the construction and operation of the proposed road. *St. Louis and Southeastern Railway Co.* v. *Teters*, 68 Ill. 144; *McReynolds* v. *Burlington and Ohio River Railway Co. supra; Rockford, Rock Island and St. Louis Railroad Co.* v. *McKinley, supra; Chicago and Iowa Railway Co.* v. *Hopkins, supra.*

It will subserve no good purpose to enter into an extended discussion of the evidence. It is sufficient to say, that the most careful examination of the evidence discloses that every element of damage shown, fell clearly within the rules thus repeatedly announced by this court, as to the proper elements to be considered by the jury in arriving at what is just compensation to the owner of the land, in proceedings of this character. So far as we can perceive, no single element of damage was included in the evidence admitted to the jury, not warranted by the decisions of this court above referred to.

Our attention has been directed to a number of detached sentences and expressions of witnesses, showing, as is contended, that the damages done by the location and operation, through the farm of appellee, of the Chicago, Milwaukee and St. Paul railroad, were included in the witnesses' estimate of appellee's damages, and therefore presumably in the verdict of the jury. The expressions, as quoted by counsel, of the witness Bailey, are as follows: "This estimate of $2300 damages is made in reference to the fact that there is another railroad,—the Chicago, Milwaukee & St. Paul railway,—across the land, farther north. If there were no other railroad across the farm, $100 per acre for the land (eighteen acres taken) would be a very big price. I embrace all the elements of damage in my answer." As to this witness, he was placed on the stand by appellant, and his answer complained of was called out upon his examination in chief, and went to the jury without objection. If it was exceptionable, objection should

have been then made, and the court at the proper time asked to instruct the jury to disregard it.

But if this excerpt be taken in connection with what preceded and followed it, it is not perceived that the testimony is open to the objection made. The witness estimates the damage of appellee at $2300, including the value of the land taken. This estimate is made up of the land taken and the depreciation of the strip cut off south of appellant's road, which he says would be depreciated one-half in value, and then adds: "I put on the extra damage above the $1000 because the new railroad runs along as close as it does to the other railroad." The same may be said with entire accuracy in respect to the statements complained of, made by other witnesses,—that when the whole testimony of the witness is considered it will be found that it was the damage to appellee's land, by reason of the construction and operation of appellant's road, alone, that entered into the estimate of damage by the witness. As a matter of course, the damages occasioned by the construction of the old road could form no element for recovery in this case, but we are not prepared to say, as a matter of law, that in considering the compensation to be allowed an owner for the construction and operation of a railroad across his farm, the fact that the land is already crossed by one road may not be taken into consideration by the jury in determining the damages by reason of the construction of the new line of road,—not that the damages occasioned by the old road, if any, can be recovered, but as a physical fact affecting the value of the farm, as a whole. We can well comprehend how the damages an owner would sustain by the construction of a railroad through his farm might be augmented by the fact that the farm had already been cut into two parts by another railroad, and it might well be that, if the value of the farm had been depreciated by the road formerly constructed over the same, the damages occasioned by the construction of the pro-

posed road might be less than they otherwise would be. The physical condition of the land,—whether affected by another railroad, a water-course, or other natural or artificial object,—must be considered, not in respect of the damage or depreciation caused by such other railroad or water-course, etc., but for the purpose of determining the damages occasioned to the owner by the proposed improvement.

We are satisfied that the statements of witnesses referred to by counsel, taken with their testimony as a whole, are not open to the objection made; but if it were otherwise, it does not follow that the verdict of the jury is tainted with the false elements suggested. The jury were specially instructed upon this very point by appellant's eleventh instruction, as follows:

"The court instructs the jury, that in estimating the just compensation and damages to which the owners of the land in this case are entitled for the land taken and damages for contiguous lands, the jury should confine themselves to damages done by the petitioning railroad company alone. In this case the Chicago, Burlington and Northern Railroad Company should only pay for the land taken by it, and the damage it alone does to contiguous property,—damaged, but not taken. No damages done by any other railroad company to the lands in question should be regarded or estimated by the jury."

No reason has been suggested or is perceived for supposing that the jury disregarded the instruction.

But it is said, as before stated, that the verdict is excessive and unjust. This objection calls in question the justness of the conclusion drawn by the jury from the evidence, not only of the witnesses who testified, but of the evidence presented to the jury by and through their personal view and inspection of the premises. In this case the jury viewed the premises, and as said by this court in *Mitchell* v. *Illinois and St. Louis Railroad and Coal Co.* 85 Ill. 566, "the jury had a right to draw their own conclusions from such observations, as well as from other testimony offered in the case." What conclusions the

jury drew in this case from the observation of appellee's premises, in connection with the purpose of appellant to take a portion of these premises for the purposes proposed, can be known only as we find it expressed in the sum of money awarded to appellee by their verdict.

There was great conflict in the evidence as to the damages. Appellant's own witnesses differed materially as to the value of the farm as an entirety,—two placing its value as low as $40 per acre, three at $50, and two at from $50 to $60,—and when these witnesses came to estimate the whole damage appellee would sustain, their estimate ranged from $2000 to $2500. The witnesses of appellee,—farm-owners and persons familiar with the value of farm lands in that vicinity,—valued the farm as an entirety at from $60 to $70 per acre, eleven of them placing the figure at $65; and when these witnesses came to estimate the whole damage appellee would sustain, it ranged from $3600 to $5000, sixteen of them estimating the damage at $4000 or more. It is thus seen that this verdict, if we exclude any conclusion the jury may have drawn from their personal inspection and view, is sustained by a clear preponderance of the evidence. It would seem, therefore, that the verdict was the result of deliberation and consideration, and not of passion and prejudice, and as the candid judgment of an unprejudiced jury in a case where the facts were not free from complication and the evidence conflicting. Under such circumstances the court would not be warranted in disturbing the verdict of the jury, especially as, in view of all the circumstances of the case, it seems to us that substantial justice has been done.

It is urged that the court erred in giving appellee's fifth, sixth and seventh instructions. The vice of these several instructions is said to be in that the jury were thereby told that the land owner was entitled to just compensation for the land taken, and for all "reasonable and probable damage" to the balance of her land not taken, caused by taking the strip con-

demned, for the uses and purposes of the proposed railroad. It is said that by the use of the words, "reasonable and probable damage," the door was opened to let in remote, conjectural and speculative damages. We do not think so. While it is true that only real, tangible and proximate damages are recoverable, (*Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co.* 105 Ill. 110,) yet it is, as said in *McReynolds* v. *Burlington and Ohio River Railway Co.* (106 Ill. 153,) all such damages as are reasonably probable, as distinguished from possible, speculative or remote damages, that form the proper basis of recovery. The jury were fully and fairly instructed as to the elements proper to be considered by them, and in considering such elements, these instructions told them they were to give such damages as, in judgment and reason, probably or naturally would result to appellee's land not taken, by reason of the taking of the strip condemned, and its use and occupation for the purposes designed by appellant. The jury could not have understood that by the use of the term, "reasonable and probable damage," any new element of damage was permitted or intended to be considered, but that in fixing the amount for the damages resulting, they would be justified in giving such sum as would reasonably compensate appellee for probable injury. But if this was not so, in view of the evidence, it is manifest appellant was not prejudiced by the instructions complained of.

Finding no error in the record, the judgment of the county court of Carroll county is affirmed.

*Judgment affirmed.*