## The Chicago and Northwestern Railway Company

*v.*

## The Town of Cicero.

*Filed at Ottawa April 1, 1895—Rehearing denied October 15, 1895.*

1. CONDEMNATION—*market value not the measure of damage for opening street across railroad.* The market value of the property taken is not the measure of compensation on condemning the right of way for a street across railroad tracks.

2. SAME—*true measure of damage in such case.* The measure of compensation for crossing a railroad right of way by a highway is the decrease in the value of the use of the land for railroad purposes.

3. SAME—*when damages are nominal, only.* Nominal damages only can be given to a railroad company for the laying out of a highway across the railroad right of way, where there is no proof of the use, or intended use, of the land except for railroad tracks.

APPEAL from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

LLOYD W. BOWERS, and A. W. PULVER, for appellant:

The measure of the land owner's damages is the difference in the value of the property without the street condemned across it, and the value of the property with the street condemned across it; or, in other words, the depreciation in value caused by the opening of the street. *Dupuis* v. *Railway Co.* 115 Ill. 98 ; *Railroad Co.* v. *Francis*, 70 id. 238; *Page* v. *Railway Co.* 70 id 324; *Railway Co.* v. *McDougall*, 126 id. 111.

The value of land must be determined, not only by the actual uses of the land, but by its capabilities, so far as they add to its market value. *Haslam* v. *Railroad Co.* 64 Ill. 353; *Railroad Co.* v. *Jacobs*, 110 id. 414; *Hercules Iron Works* v. *Railway Co.* 141 id. 491; *Railway Co.* v. *Blake*, 116 id. 163.

Possession is presumptive evidence of title in fee. This evidence from possession was uncontradicted. And still further, by filing the petition appellee admitted ap-

pellant's ownership of the land.    *Railroad Co.* v. *Bryant*, 57 Ill. 473; *Railroad Co.* v. *Laurie*, 63 id. 274; *Railway Co.* v. *Teeters*, 68 id. 148.

It may now be taken as settled that the petitioner condemns only an easement of way, and not the full fee. *Railroad Co.* v. *Chicago*, 138 Ill. 453; *Railroad Co.* v. *Chicago*, 141 id. 586.

FARLIN Q. BALL, Town Attorney, for appellee:

The measure of compensation is the decrease in value of the use for railway purposes which will be caused by the use for the purposes of a street, such use for street purposes being subject to the use of the same by the railway for railway purposes. *Railway Co.* v. *Chicago*, 140 Ill. 309; *Railroad Co.* v. *Chicago*, 138 id. 453.

While the market value of neighboring lands, differently circumstanced, may be shown as throwing some light upon the question, it does not furnish an adequate test of the value. *Railway Co.* v. *Railway Co.* 112 Ill. 589.

Where the evidence shows some damages, but furnishes no basis for ascertaining the amount, nominal damages may be awarded. *Railway Co.* v. *Railway Co.* 105 Ill. 110.

All the town gets by this proceeding is a use, and that use is servient to the use of the same crossing by the company for its purposes. *Railway Co.* v. *Chicago*, 141 Ill. 586.

Railways hold their rights of way subject to the right of the public to extend streets across them. *Railway Co.* v. *Chicago*, 141 Ill. 286.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

The town of Cicero having provided, by ordinance, for opening West Fifty-third street across appellant's right of way, filed its petition in the Superior Court of Cook county for the ascertainment of the just compensation to be paid therefor, and for judgment of condemna-

157—4

tion. The property is described in the petition as "a strip of land sixty-six feet in width across the right of way of the Chicago and Northwestern Railway Company there situate, included within the lines of said West Fifty-third street as proposed herein to be laid out, produced across said right of way." The compensation was fixed at one dollar, and judgment entered that upon the payment of that sum the town should have the right to take possession of and damage the property in respect to which such compensation should have been so paid. From that judgment this appeal is prosecuted.

The petitioner proved by several witnesses that the compensation which appellants should receive would be merely nominal. This testimony was based upon the theory that opening the street across the right of way would not give the municipality a right to the exclusive occupancy of the ground, but that it could only use the same jointly with the railroad company in the operation of its road. Appellant's right of way is one hundred feet wide. At the time of the trial there were laid across the contemplated street two main tracks, the rest of the ground being vacant. The superintendent of the road testified that the company would not "have any need for more than four main running tracks across the land involved in this proceeding." A civil engineer in the employ of the company testified that four tracks would occupy fifty-three feet in width, or, rather, his testimony is to the effect that four main tracks could be properly laid so as to occupy no more than fifty-three feet of the right of way, and he says: "That would leave of the portion unoccupied by any track forty-seven feet by sixty-six feet." Thirty feet of this forty-seven feet would be left on the north side of the tracks and seventeen feet on the south.

The only evidence offered by the company on the question of compensation was that of real estate men acquainted with the property, location, etc., and the

value of lands in its vicinity. The testimony of Charles E. Simmons, land commissioner for appellant, is substantially the same as that of each of the other of these witnesses. He was asked: "What, in your judgment, was the market value of this piece of land on the date of the filing of the petition in this proceeding? By this piece of land I mean, of course, the piece of land the proposed street crosses and which is involved in this proceeding." He answered: "Sixteen hundred dollars. That is this piece, sixty-six by one hundred." To the question, "How much less, if anything, in your judgment, was the piece of land involved in this proceeding worth, according to its fair market value, on the day of the filing of this petition, with a street open across it than without a street open across it?" he answered, "About $1200." He then gave the following explanation: "The price I have named of $1600 is twenty-five cents a square foot. I figure that the fifty-three feet, or the twenty-seven feet in width, now occupied by railroad tracks, and an additional twenty-seven feet, but according to Mr. Evans it was twenty-six feet and a half. Twenty-six feet and a half more to be occupied by two additional tracks makes fifty-three feet in all. It would be diminished one-half of the value, or twelve and one-half cents per square foot,—that is, the part our four tracks, if they were put on, would cover, would be diminished one-half by reason of the division of the use between the railroad company and the public. There is no other possible way of figuring than to figure it as equally used by each. Then, as to the part left,—the forty-seven feet which would be left,—I figure the entire market price of twenty-five cents per foot, the two together making the aggregate of $1212. The reason I figure the entire market price as to the part the four tracks would not cover, is on the supposition that four tracks would be sufficient for the company's use, and that they be deprived entirely of the use of the balance for any valuable purpose. These side pieces

that the four tracks would not occupy were certainly valuable for many purposes at the time of the filing of the petition. It might be used for side-tracks on which to make up trains and store cars, for freight platforms, for a passenger station even, for coal sheds, for the storage of lumber and the handling of local freight, and a signal tower. I could think of a good many uses to which these side pieces could be put, if I had a little time, in connection with a railway."

On this testimony counsel for appellant insist that the verdict of the jury is contrary to the evidence, and they attempt to apply to the case the same rule for the ascertainment of just compensation which obtains in the condemnation of individual property,—*i. e.*, the market value of the property taken. We have frequently decided that no such measure of compensation can be applied, where, as here, a municipality seeks to and can only acquire the right to a joint use with the railroad. The reasons for applying a different rule in such cases are manifest, and have been stated again and again in the decisions of this court. See *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co.* 105 Ill. 110 ; *Illinois Central Railroad Co.* v. *City of Chicago*, 138 id. 453 ; *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 140 id. 309 ; *Illinois Central Railroad Co.* v. *City of Chicago*, 141 id. 586 ; *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago*, 148 id. 509 ; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago*, 149 id. 457.

In *Chicago and Northwestern Railway Co.* v. *City of Chicago, supra*, we said (p. 314): "The city did not propose to condemn the land of the railroad companies, nor to prevent the use of the tracks and right of way by such companies. It merely proposed to extend a street across such tracks and right of way. The value of the land where the street was to cross could not, therefore, be the measure of just compensation for property taken in the condemnation proceeding ; nor could the value of the

use of the property for railroad purposes be the measure
of such compensation.   So far as the taking of the strip
was concerned, the measure of the compensation would
be the amount of decrease in the value of the use for
railroad purposes which should be caused by the use for
the purposes of a street, such use for the purposes of a
street being subject to the use of the companies for rail-
road purposes.   We cannot discover that there was any
testimony to justify any more than a judgment for nomi-
nal damages, so far as the taking of property is con-
cerned." Nor is this rule in any way affected by the fact
that a railroad company may own the fee to its right of
way.  (*Chicago, Burlington and Quincy Railroad Co.* v. *City
of Chicago, supra.*)   The land sought to be condemned is
only a right of way, by whatever title held.

But an attempt is made to draw a distinction between
so much of the land as it is said will be needed for tracks
(fifty-three feet) and the forty-seven remaining feet, which
it is assumed may be used for other than railroad pur-
poses, or put upon the market and sold for any legitimate
business purpose.   We think this contention is fully an-
swered by what is said in *Chicago, Burlington and Quincy
Railroad Co.* v. *City of Chicago, supra,* on pages 461 and 462.
A railroad company can only acquire so much real estate
for right of way as is reasonably necessary for the con-
struction and operation of its road.   It can compel the
owner to surrender that much of his land, but no more.
It can acquire *necessary* right of way by purchase, if it
can agree with the owner, or, failing to agree with him,
it can take it by condemnation, under the Eminent Do-
main law.   Whether obtained by voluntary conveyance
or condemnation it is held for railroad purposes.   And
we said in *Chicago, Burlington and Quincy Railroad Co.* v.
*City of Chicago, supra* (p. 461): "A railroad company can
only acquire land, whether by voluntary purchase or
otherwise, for railroad purposes, as defined in its char-
ter.   It does not hold land, as does the ordinary owner,

with the right of using it for any purpose to which it may be adapted, or with the right to sell it at the highest price which it may bring in the market. Its capacity to acquire or hold lands is not general, like that of a natural person, but is limited to the uses of the railroad business. Being a creature of law, it possesses only those powers which are conferred upon it by its charter, either expressly, or as incidental to the objects of its organization,"— citing *Albany Northern Railroad Co.* v. *Brownell,* 24 N. Y. 345 ; *Rumsey* v. *New York and New England Railroad Co.* 114 id. 423 ; *New York Central and Hudson River Railroad Co.* v. *Aldridge,* 135 id. 83.

A railroad company cannot obtain a strip of land one hundred feet wide under a charter allowing it to acquire that much for right of way, and then convert a part of it to other than railroad purposes or sell it as private property. To permit it to do so would be to allow private property to be indirectly taken for private use. It may be that under the third clause of section 19, chapter 114, of the Revised Statutes, (2 Starr & Curtis, 1913,) which gives railroad companies the power "to purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway, * * * and to convey the same when no longer required for the use of such railway," land acquired by voluntary purchase for right of way, no longer required for that purpose, may be sold and conveyed for general business purposes ; but if it can, no such proof was made or offered in this case as would justify an estimate of compensation on that basis. It was not pretended, on the trial, that the defendant had ceased to use the forty-seven feet as right of way, or that it intended to do so. All that was shown, or attempted to be shown, was, that the number of main tracks which the company would need, laid in a particular manner, would not occupy the whole one hundred feet of right of way. It will not be seriously contended that the company may not lay other

tracks than those which are now considered necessary, or that it may not lay the additional tracks which it is admitted it will need, upon the one hundred feet when it pleases. That is to say, notwithstanding this judgment of condemnation it can, at any time in the future, place as many tracks upon the forty-seven feet mentioned as it deems proper in the operation and management of its road, and use the whole of its right of way as it chooses, consistent with the right of the public to use the street when opened across it. If the city had been required to pay the large sums claimed, the company would still have owned, and had the right to use, the right of way, whether occupied by tracks or not, subject only to the joint use by the public. Railroad companies need, and have the undoubted right to use, right of way for other railroad purposes than laying tracks.

In no view of the case can it be said that appellant was entitled, under the evidence, to more than nominal compensation. As we said in *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co. supra,* in such cases "nothing should be allowed for imaginary or speculative damages, or such remote or inappreciable damages as the imagination may conjure up, and which may or may not occur in the future." (*Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380.) "Possible or imaginary uses are to be excluded, nor can the owner show the probable future use of the property." (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago, supra;* Pierce on Railroads, 217; Lewis on Eminent Domain, 480.) Whether appellant will cease to use forty-seven feet, or any other portion, of its right of way as necessary for the operation of its railroad; whether it will desire to use it for placing structures upon it for use in connection with the operation of its road; whether it will ever place side-tracks upon it on which to make up trains and store cars; place freight platforms, passenger stations, coal sheds, or use it for any other purpose than that for which

it is now used, is, under the evidence in this case, purely speculative. Such uses are only possible, and furnish no grounds upon which to base an estimate of just compensation. Without reference to the foregoing authorities in support of this proposition, it seems so clear, upon principle, that it cannot be seriously questioned. What would be the measure of damages if a court should attempt to allow a railroad company for such uses of its right of way as it might possibly, at some time in the future, desire to appropriate it to? Certainly it could not be the market value of the land, because, as before said, the railroad, notwithstanding the condemnation, continues to own it, with the right to use it. Conceding that this vacant right of way is suitable for a passenger station, and that the company may possibly some time want to use it for that purpose, any attempt to estimate compensation for the loss of that right must be the merest guess or speculation. Just compensation "is the loss sustained in dollars and cents, and the amount of the loss must be shown, together with its amount,—not necessarily with precision and accuracy, but approximately; and if damage is shown, but the amount is not approximately proved, there can be no more than nominal damages allowed." *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co. supra.*

What has been said disposes of all the substantial questions raised on this record. Upon the evidence the verdict of the jury was the only one which could have been properly returned under the law applicable to the case. Therefore, even though the instructions given do not accurately state the law, (as some of those given at the instance of appellant certainly do not,) the error must be treated as harmless.

We are clearly of the opinion that no reason for a reversal of the judgment below is shown, and it will accordingly be affirmed.

*Judgment affirmed.*