## General Electric Railway Co., Impleaded, etc., v. Chicago City Railway Co.

1. STREET RAILWAYS—*Right to Operate Cars a Proerty Right.*— The tracks of a street railway company and its right to operate its cars thereon, are property rights, and as such are entitled to protection, but it has no exclusive right in or to the streets upon which its tracks are laid.

2. SAME—*Right to Use Their Rails as a Part of the Street.*—A street railway company, although it owns the rails which it lays down in a street, has no exclusive right to use them, except as a part of the street.

3. SAME—*No Exclusive Rights.*—A street railway company has no right, for the purpose of preventing competition, or of increasing its own revenues, or of in any other way being a hindrance to the public, to say that the rails of a competing company shall not be laid alongside of or across its own tracks; neither can it be permitted to unnecessarily interfere with the right of the other.

4. SAME—*Nature of the Right to lay Tracks—Abutting Owners.*— Street railway companies take permission to place their tracks in the

Gen. Electric Ry. Co. v. Chicago City Ry. Co.

streets of a city, subject to such conditions as are imposed by law, and to whatever damage the owner of any abutting property may sustain by reason of the construction of the road.

5. SAME—*Occupancy of the Street by Different Companies.*—Where two corporations have been given the right to lay their tracks in the same street, each is bound to place its rails and to use the street in such a manner that the public may have the benefit which can be derived from such joint use.

6. SAME—*Joint Occupancy of Street.*—The fact that a street railway company is about to proceed to lay its track in a street already occupied by another company with its tracks is not necessarily a threatened invasion of the easements of the latter company or its property rights.

7. EMINENT DOMAIN—*Compensation for Property Damaged.*—When property is merely damaged for public use it is not necessary that compensation be made before the damage occurs, for the reason that the question as to whether such property will be so damaged is always open to dispute.

8. STREETS—*Rights of Persons in.*—Every person who drives or walks along the streets of a city is bound to do so with due deference to the rights of others who may also wish to pass thereon.

9. SAME—*Rights as to Tracks of Street Railways.*—All persons have an indisputable right to cross the tracks of street railways as well as to pass longitudinally thereon, although in so doing they may, to some extent, interfere with the use of such tracks or damage its rails, and in some degree hinder the company in its efforts to serve the public.

10. FRANCHISES—*Requisites of Ordinances Granting.*—Under chapter 66, R. S., relating to horse and dummy railroads, providing that the municipal authorities shall not grant the right to construct street railway tracks in streets except upon the condition that the company will pay all damages to the owners of property abutting upon such street, it is not necessary that the condition relating to the payment of damages should be inserted in the ordinance granting the right.

11. ABUTTING PROPERTY OWNERS—*Nature of the Rights of.*—The right given to the abutting property owner by the frontage act is not one that may be exercised with the same freedom and the same motives by which he controls his other property, but there is thereby intrusted to him a power which he is to exercise for the benefit of the public.

12. NUISANCES—*When to be Abated at the Suit of the Attorney-General.*—The attorney-general represents the public, and at his suit public nuisances may be abated, public trespasses restrained, and claims unlawfully asserted against the public, declared baseless.

13. INJUNCTION—*To Prevent the Construction of a Street Railway.*—A court of equity will not interfere to prevent the construction, in the streets of a city, of a public railroad to be used equally for the benefit of all the public, but will remit the parties to a court of law and to such relief as that tribunal affords.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1896. Reversed. Opinion filed August 5, 1896.

WALKER, JUDD & HAWLEY, attorneys for appellant; THOMAS A. MORAN, CHARLES A. DUPEE, RICHARD PRENDERGAST, of counsel.

It has long been established that no private property owner, who has property abutting on a public street, can, by virtue of such ownership, and alleging apprehended damages to such property from the building of a street railway, maintain a bill for injunction against the laying of a track in such street where the municipality consents to such construction. Tibbetts v. The West & South Towns Street Railway Co., 54 Ill. App. 180; North Chicago St. R. R. Co. v. Cheatham, 58 Ill. App. 318; Phelps v. The Lake St. El. Ry. Co., 60 Ill. App. 471; Moses v. R. R. Co., 21 Ill. 516; Union Building Ass'n v. Chicago, 102 Ill. 379; Hesing v. Scott, 107 Ill. 600; Stetson v. Railway Co., 75 Ill. 74; Patterson v. Ry. Co., 75 Ill. 588; Corcoran v. Ry. Co., 149 Ill. 291.

As the only difference between a case where a street railway is built in a street under a valid license, and a case where it is built in a street without a valid license, is that in the latter case the public franchise or easement of passage is unlawfully obstructed, the question of the validity of the license is one which concerns only the public as a whole, for it is not a matter of special grievance to any single abutter, but a matter affecting the whole public. It has accordingly been held by the overwhelming weight of authority that the abutter has no more right of interference where the tracks are to be laid without a valid license than he has where the tracks are duly authorized. The damage to him is the same, whether the road is duly authorized or not, and in either case, especially where a mere street railway is involved, and no additional servitude or diversion of the street from its proper and legitimate use is threatened, he can not maintain a bill for an injunction. W. J. Ry. Co. v. Camden G. & W. Ry. Co., 29 Atl. Rep. 423; Palmer v. L. & R. C. G. Ry. Co., 108 Ind. 137; Garnett v. Ry. Co., 20 Fla. 889; Van Horne v. Newark Passenger Ry. Co., 48 N. J. Eq. 332;

Borden v. Ry. Co., 33 Atl. Rep. 276; Blodgett v. El. Ry. Co., 28 Legal News, 255; Stewart v. El. Ry. Co., 58 Ill. App. 446; Ill. & St. L. R. R. Co. v. St. Louis, 2 Dillon, Federal Cases, Case No. 7,007; Hogan v. General Pacific R. R. Co., 71 Cal. 83.

The crossing of existing street railway tracks at street intersections, by tracks of another street railway company, is a thing that may be permitted by the municipality, and the validity of such permission is not open to question by the senior company in an injunction suit, nor does equity regard such crossing, where permitted by the municipality, as creating a right to an injunction. Metropolitan City Ry. Co. v. West Chicago Ry. Co., 87 Ill. 321; The Chicago, B. & Q. Ry. v. The West Chicago St. Ry. Co., 54 Ill. App. 273; The Chicago, B. & Q. Ry. Co. v. The West Chicago St. Ry. Co., 156 Ill. 255; The Cincinnati, C. & St. L. Ry. Co. v. West Chicago St. Ry. Co., 156 Ill. 385; Market St. R. R. Co. v. Central R. R. Co., 51 Cal. 583; Highland Av. R. R. Co. v. Birmingham, 93 Ala. 505; Ogden City R. R. Co. v. Ogden City, 26 Pac. Rep. 288; Henderson v. Ogden City Ry. Co., 26 Pac. Rep. 286; Braddock St. Ry. Co. v. Braddock El. Ry. Co., 49 Leg. Int. 25; Brooklyn City Ry. Co. v. Coney Island & B. R. Co., 35 Barb. 264; The West Jersey Ry. Co. v. The Camden D. W. Ry. Co., 29 Atl. Rep. 433; N. Y. & N. H. R. R. Co. v. 42d St. & Grand St. F. R. R. Co., 50 Barb. 309; Jamaica R. R. Co. v. Brooklyn City Ry. Co., 33 Barb. 420; Van Horn v. Newark Pass. Ry. Co., 48 N. J. Eq. 332; C. & C. T. R. Co. v. Whiting, H. & E. R. Co., 28 N. W. Rep. 604; C. P. R. Co. v. East H. R., 30 Atl. Rep. 159; N. Y. & H. R. Co. v. 42d St. R., 32 How. Pr. 499; N. Y. & H. R. Co. v. 42d St. R., 50 Barb. 312; A. & C. P. R. v. Douglas, 5 Seld. 444; D. B. T. P. R. Co. v. B. R. P. R. Co., 10 Penn. Co. Ct. 401.

Edwin Walker, attorney for appellee; Julius S. Grinnell and S. S. Gregory, of counsel.

The appellant having no power to construct its track in the city of Chicago, except by consent of the city council,

and such consent being void, a court of chancery has juris-
diction to restrain by injunction the appellant from exer-
cising such power on bill filed by a party showing special
property injury, resulting from the exercise of such un-
warrantable and unlawful power.    Hickey v. C. & W. Ind.
Co., 6 Ill. App. 172; Hunt, Att. Gen., etc., v. C. H. & D.
Ry. Co., 20 Ill. App. 282, 121 Ill. 638; N. C. Street R. R.
Co. v. Cheetham, 58 Ill. App. 318; Bez v. C., R. I. & P.
Ry. Co. et al., 23 Ill. App. 137; Green v. Oakes, 17 Ill. 251;
Zearing v. Raber, 74 Ill. 409; Carter v. Chicago, 57 Ill.
283; R. R. Co. v. People, 92 Ill. 176; Earll v. Chicago, 136
Ill. 288; Atty. General v. C. & E. R. R. Co., 112 Ill. 538;
McCartney v. R. R. Co., 112 Ill. 611; Rigney v. Chicago,
102 Ill. 78; Griswold v. Brega, 160 Ill. 490; Pomeroy's
Equity, Vol. III, Sec. 1350; Cadigan v. Brown, 120 Mass.
493; Milhau v. Sharp, 27 N. Y. 611; Flynn v. Taylor, 28
N. E. 418; 127 N. Y. 596; Roberts v. Easton et al., 19 Ohio
St. 78; Hart v. Buckner, 54 Fed. 925; C. & W. I. R. R. Co.
v. R. R. Co., 15 Ill. App. 587; C. C. Ry. Co. v. Chicago, 90 Ill.
573; Ill. Cen. R. R. Co. v. Com. of Highways, 161 Ill. 247;
Dillon, Municipal Corporations, 420; Wetmore v. Story, 22
Barb. (N. Y.) 414; Drake v. Phillips, 40 Ill. 388; Lebanon
v. R. R. Co., 77 Ill. 539; Schott v. People, 89 Ill. 195; Chi-
cago Gen. Ry. Co. v. West Chicago Street R. R. Co., 63 Ill.
App. 464; Chicago General Ry. Co. v. Chicago City Ry.
Co., 62 Ill. App. 517; Central City Ry. Co. v. Fort Clark
Ry. Co., 81 Ill. 523.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE
COURT.

This is an appeal from an interlocutory order of the Cir-
cuit Court, restraining the General Electric Railway Com-
pany from laying down, locating, constructing or erecting
in or over or upon any part or portion of certain named
public streets and highways in the city of Chicago, any
railroad track or tracks, or wires, or any other thing or
structure whatsoever, constituting the route of the right of
way of the proposed railway of said company as described

in an ordinance of the city of Chicago, and also enjoining the said Electric Railway Company from disturbing or interfering with the railway tracks, ties, and railway bonds of the Chicago City Railway Company, or the paving within the right of way of the said Chicago City Railway Company, and enjoining the commissioner of public works from issuing any permit or license to the General Electric Railway Company to construct or erect in any of said streets any track. The streets named in the injunction, to place and operate upon which a street railway, the General Electric Railway Company, appellant, claims to have a right by virtue of an ordinace to it granted by the city of Chicago, constitute a route of about ten miles. The injunction was issued without bond. The Chicago City Railway Company, the complainant below, at whose instance the injunction was issued, claims to be entitled to maintain such injunction because of certain tracks it has in Dearborn street, running from 20th to 21st street, together with three switch tracks therefrom, to its blacksmith and machine shops, situated upon its property on the east side of Dearborn street, and also because the proposed track of appellant will cross the track of appellee at a number of streets, more particularly at the intersection of Dearborn street with 22d street; and also because the complainant below is the owner of several hundred feet of property abutting upon Dearborn street, along which appellant is proposing to construct its railway. The tracks of appellee mentioned in the bill in this case, as well as its right to operate cars thereon, are valuable property, and a property right which is entitled to protection. Neither for public nor private use can the property of appellee be taken without giving to it adequate compensation. It is the settled law in this State that private property can not be taken, that is, actually entered upon, seized and appropriated for public use, without just compensation having been first made to the owner. When property is merely damaged, it is not necessary that such just compensation should be made before the damage takes place, and this for a most obvious reason, as, whether property will be damaged

by the taking of other property and the making of a pub-
lic improvement, is a matter concerning which there is room
for great dispute, and most frequently is great uncertainty.
If no public improvement could be entered upon until the
damage to all the property done thereby had been ascer-
tained and paid, no public work could be constructed until
all the world had been made parties to a proceeding to de-
termine whether any other property than that actually
taken would be damaged by the proposed improvement.
We are, therefore, in this case, first to consider what
is the nature of the property which the complainant
has in the streets of this city, and what its rights in
respect thereto are; and, second, whether the defendant is
proposing to enter upon, seize and appropriate to its pur-
poses anything to the use of which the complainant has an
exclusive right. The rails which the complainant has placed
in the streets in Chicago are, doubtless, its property; it paid
for and placed them there, and may, consistent with its obli-
gations to the public, in a reasonable manner, remove such
rails, replacing them with others. But it has no exclusive
right to the use of such rails. Indeed, it has no right to
use them at all in the street except as part of it. These
rails are for its cars to run upon, but thousands of other
vehicles may and do, incidentally, lawfully make use of such
rails in the ordinary course of traffic. It has been held
that the habitual and continuous use of street railway
tracks by a coach company engaged in carrying passengers
for hire, in competition with a railway company, is an in-
fringement of its rights. Camden Horse R. R. Co. v. The
Citizens Coach Co., 28 N. J. Eq. 145; 31 N. J. Eq. 535.

However this may be, it is unquestionably the case that
an ordinary vehicle, not using the tracks as a competitor for
the business of the complainant, has the same right to run
along upon and make use of its tracks that has the appellee,
provided that such vehicle does not interfere with the use
of the tracks by the complainant in its business of serving the
public. Every person who drives or walks along the streets of
the city, is bound to do so with due deference to the rights of

others who may wish to pass thereon. He may not, either by stopping or by the slowness of his movement, or his refusal to get out of the way, interfere with the proper and legitimate use of the street by others, for the highway is for the common use of all of the public, and each one must use the common thoroughfare in such way as to inconvenience as little as possible the multitude of others whose rights are equal to his. So, too, all persons have a right to cross the tracks of the complainant; and while such crossing, as well as longitudinally passing thereon, may and does to some extent interfere with the use of its property by the complainant, in some degree hindering it in its efforts to serve the public, to some extent wearing out and damaging its rails, nevertheless the right to do so is indisputable, and the complainant is not in any form of proceeding entitled to restrain such use by injunction, or entitled to recover the damage it suffers thereby; for it was a condition well understood by it when it placed its rails in the street and began to operate cars thereon, that it had no exclusive right to the use of such rails; that like the pavement, which by virtue of city ordinances it is compelled to lay, the rails are a part of the surface of the street over which, and along which, all persons not intentionally or unnecessarily interfering with the business of the complainant may freely pass.

The complainant has no exclusive right in or to the streets upon which its rails are placed. As has before been said, all its rights to place rails in the streets and operate cars thereon, are conditioned upon its serving the public, and it has no right, for the purpose of preventing competition, or to increase its own revenues, or in any other way, to be a hindrance to the public; consequently it can not say that the rails of a competing company shall not be laid alongside, or shall not cross its own. But it is stated that its tracks can not be crossed by appellant without taking physical possession of, cutting into and removing a portion of them, and materially interfering with the use of such tracks at various places, notably on Dearborn street between 20th

and 21st, and at the intersection of Dearborn street and
22d street. It is undoubtedly the case that the proposed
crossings can not be made without a physical interference
with the tracks of the complainant, and without in some
degree interfering and affecting the operation of its road.
The question is whether such interference and such effect
are anything more than conditions to which its track and
business have always been subject. As before stated, we
do not understand that appellant is proposing to deprive
appellee of, or of the use of, any of its property. It is merely
insisting upon a right to use the streets in common with
appellee, and admits, as is unquestionably the case, that it
is bound not to make an unreasonable or unnecessary inter-
ference with the business of appellee.

In the case of The Chicago, Burlington & Quincy Rail-
road Company v. The West Chicago City Railway Com-
pany, 156 Ill., page 255, the Supreme Court said :

" The fact that the tracks of plaintiff in error are laid
across said streets, and that its freight and passenger cars
are permitted by the city to pass over the same upon said
tracks, gives plaintiff in error no exclusive use of the cross-
ing, but only a use to be enjoyed in common with the pub-
lic. P., Ft. W. & C. R. R. v. Reich, 101 Ill. 157. A city has
no right to authorize railroad tracks to be laid upon streets
so as to exclude the other public uses of a street. Ligare
v. City of Chicago, 139 Ill. 46. It will not be denied that
pedestrians and carriages and wagons and omnibuses and
other vehicles have a right to pass along these streets over
and across the tracks of plaintiff in error. A street car
running upon rails laid upon the surface of the street, and
used in the ordinary way under the regulations of the city
authorities, is merely another sort of carriage. The use of
a street for a horse railway is such a use as falls within the
purposes for which streets are dedicated or acquired by
condemnation. 2 Dillon on Mun. Corp., 4th Ed., Sec. 722.
The proprietor, when he dedicates the street, or is paid for
property to be so used, will be presumed to have contem-
plated such improved and convenient modes of use as are

reasonably consistent with the use of the street for ordinary vehicles and in the usual modes.  Idem.  The weight of authority is in favor of the position that a street railway is not an additional servitude, even where the fee of the street is in the abutting owner.  2 Dillon on Mun. Corp., 4th Ed., Sec. 723, (574), and cases cited in note 3.  It is otherwise in the case of the construction of a steam railroad in a public street.  A steam railway is regarded as an additional servitude.  Idem., Sec. 625, (576).  In his work on Municipal Corporations, Judge Dillon thus clearly states the distinction here indicated:  " The weight of judicial authority undoubtedly is that where the public have only an easement in the streets, and the fee is retained by the adjacent owner, the legislature can not, under the constitutional guarantee of private property, authorize an ordinary steam railroad to be constructed thereon against the will of the adjoining owner without compensation to him.  In other words, such a railway, as usually constructed and operated, is an additional servitude.  As to street railroads constructed in the usual manner, and operated under municipal regulation, so as not to exclude the free passage of ordinary vehicles, the almost general, and in the author's judgment, the sound judicial view is, they do not create a new burden upon the land, and hence the legislature, no matter whether the fee is in the abutter or in the public, is not bound to, although it may, provide for compensation to the adjoining proprietor."  2 Dillon on Mun. Corp., 5th Ed., Sec. 725, (576).  The courts of most of the States, except those of New York, hold that a street surface passenger railway, constructed at street grade, in the usual manner, is not a new servitude upon the land for which the owners of the fee are entitled to compensation.  Booth's Street Railway Law, Sec. 82.  The use of the street by such a street railroad company, being within the purposes for which streets are laid out and maintained, the abutting owner can recover no compensation for the damages resulting from such use, whether the fee is in him or in the city, provided the right of ingress and egress and of passage and re-passage is left reasonably free to him.

Lewis on Em. Dom., Sec. 124; Elliott on Roads and Streets, pages 528, 529, 558. Streets are laid out in order that the public may enjoy the right of free passage in vehicles, as well as on foot, and such vehicles may be carriages running on grooved tracks, or operated in the modes or by the forces which an advanced civilization may require for the general convenience. Pierce on Railroads, Sec. 234; Cooley on Cons. Lim., 6th Ed., page 683. The laying of a street railway in the streets of a city, and the running of cars thereon for the transportation of passengers must be regarded as among the uses contemplated when the street was laid out; hence the owner of abutting land, even though he owns the fee of the street, can only recover damages for such special and material injury as may be shown to have resulted to his property from the construction and operation of such railway. 23 Am. & Eng. Enc. of Law, page 954.

" It appears here that the defendant in error intended to lay its tracks and operate its cars by animal power only, although it had the right under the ordinance of 1892 to use cable or electric power, or other motive power. It also appears that the tracks of defendant in error were to be laid without injury to the tracks or property of plaintiff in error, and without expense to it. Where the crossing is made in the manner specified in the answer in this case, the usefulness of the railroad crossed is not in any manner impaired. C. & N. W. Ry. Co. v. Chicago, 140 Ill. 309. 'For the crossing of tracks at grade, without material injury, compensation is not allowed.' Booth on Street Railway Laws, Sec. 114. Damages are not allowable for increased delay or danger in crossing. Damages must be real, tangible and proximate, and not conjectural or speculative. P. & P. U. Ry. Co. v. P. & F. Ry. Co., 105 Ill. 110; C., B. & Q. R. R. Co. v. City of Chicago, 149 Id. 457."

· That case was, like the present, a bill for an injunction to restrain a street railway company from constructing its tracks across the tracks of another road—in that case the tracks of the C., B. & Q. railroad; which injunction was refused. We perceive in principle no difference between

the question before the court in that case and that presented by the proposed crossing at the intersection of 22d and Dearborn street, and the existence of the tracks of appellee in Dearborn street between 20th and 21st. The right of competing street railway companies to lay tracks in the same street has before been considered by this court in an opinion filed April 13, 1896 (63 Ill. App. 464), in the case of The Chicago General Railway v. The West Chicago Street Railway. It appeared in that case that the West Chicago Street Railway Company had placed certain switch tracks in one of the streets of the West Division, in such way as to unnecessarily inconvenience and interfere with the placing by the Chicago General Railway Company of its tracks in such streets, whereupon the last mentioned company filed its bill to restrain the West Division Railway Company from such interference, and compel the removal or replacement of its tracks. A demurrer to the bill having been sustained by the Superior Court, upon an appeal here, the decree of the court below was reversed, with directions to overrule the demurrer. In that case Mr. Justice Waterman said : ." Neither of the contending street railway companies has, merely for its own accommodation, profit or pleasure, any right to lay tracks in public streets. The privilege in this regard given to them is for the accommodation and benefit of the public, and their undertaking to serve it. Each corporation is bound to exercise its right to place and maintain railway tracks in such manner that the same shall be an accommodation to the public, and shall not unnecessarily interfere with its right of passage. Where there has been given to two corporations the right to place rails in and use the same street, each is bound to place its rails and use the street in such manner that the public may have the benefit which can be derived from such joint use. Neither can be permitted to unnecessarily interfere with the right of the other." Such statement is here approved and reiterated. Each of the contending parties in this case is bound at all places in the public streets, wherever they have a common right, to place its rails and use the street in such

manner that the public may have the benefit which can be derived from a joint use. Neither will be permitted to unnecessarily interfere with the right of the other.

It is urged by appellee that chapter 66 of the Revised Statutes, as to horse and dummy railroads, provides that the corporate authorities of a city shall not give the right to construct street railway tracks upon any street, except "upon the condition that the company will pay all damages to the owners of property abutting upon the street upon or over which such road is to be constructed, which they may sustain by reason of the location or construction of the road, the same to be ascertained and paid in the manner provided by law, for the exercise of the right of eminent domain." Such condition not having been inserted in the ordinance given to appellant, it is urged that the same is void. We do not understand the law requires that such condition shall be inserted in the ordinance granted to a street railroad company, but we do understand that appellant and all other street railroad companies take permission to place tracks in the streets of the city, subject to such condition, and whatever damage the owner of any abutting property may sustain by reason of the construction of appellant's road, it must, under the constitution and laws of this State, pay. We do not understand, as is urged by appellee, that there is in this case a threatened invasion, not only "of its easements connected with its property, but also an invasion of the property itself," other than such invasion as has always been open to the public, and subject to which right upon the part of the public, the complainant has ever held and now holds its property—that is, a right to invade and make use of such easements and property in a manner consistent with the use to which such street was devoted and exists, namely, that of a public highway. Whoever drives along the complainant's tracks, or crosses over them, to a certain extent, does invade its easements and its property. Appellant is proposing to do no more. Its acts will differ in degree only from that of the ordinary teamster. Neither the common truckman or appellant has any right to unneces-

sarily or unreasonably interfere with complainant's property or easements.   The complainant's property is not to be taken from it.   It is merely to be subjected to a public and not unreasonable use, similar to that which has always existed.

As to the complainant's rights as an abutting owner under its claim that the ordinance of appellant was procured by fraud and is therefore void, the law for this court has been by it settled, as is believed, in respectful obedience to the rulings of the Supreme Court of this State in numerous adjudications.   It is impossible for any ordinance to constitute less authority than a void ordinance.   A void thing is no thing.   In dealing with such mere conception of the mind, it is utterly immaterial what it is that makes the alleged actuality, no thing.   The numerous charges of fraud add nothing to the strength of complainant's position; while they do serve to admonish the court that in the consideration of the law applicable to this case, and the rights of the parties therein, it must not, by charges of fraud, which every court abhors, be led into awarding to the complainant, because of the iniquity of the defendant, remedies and rights to which, under the law, the complainant is not entitled, for whatever may have been the sins of the defendant it is entitled to be tried in accordance with the law.   If a trespasser in the streets of Chicago, the way to prevent that trespass, as well as to protect the rights, not only of the public, but of each and every property holder, is clear.   The Supreme Court of this State has lately said: "It can not be too often repeated that the streets of a city belong to and are for the use of the public."   In the nature of things the public domain and the public right are things which will be continually encroached upon by individuals.   The writer of this opinion is inclined to regard this and other cases brought by abutting property owners, seeking to restrain the use of streets for public purposes, as an entering wedge toward wresting from the public the control of its streets. That the authority of the public in this regard has not always been wisely exercised is quite true, but it is an authority and a control essential to the most cherished rights of the citizen.

It is stated that the frontage act confers upon the abutting property owner a new right of property which the courts will protect by the writ of injunction. The statute does not, in terms, create any new property right, neither does it declare that the power therein intrusted to the abutting owner shall be secured to him by injunction. If it is a grant of a property right which may be exercised for the emolument of the property owner alone, without reference to and in contemptuous disregard of the wish and interest of the public, it was a grant of a most important and most valuable property without consideration. If it be a well settled rule of law that public grants are always to be strictly construed, how much more so are grants made without consideration? The Supreme Court of this State, in the case of Doane v. The Chicago City Railway Co., 160 Ill. 22, indicated that the right given to the abutting owner by the frontage act is not one of property, that may be exercised with the same freedom and the same motive that he controls other property, but that there is thereby intrusted to him a power which he is to exercise for the benefit of the public. In this case, as in others, there is no pretense by the abutting owner that he is acting in the least in the interest of the public. This corporation, created to serve the public, enjoying most valuable franchises given to it in consideration of public service to be by it rendered, comes into court and asks that by a writ of injunction it shall be protected from a use of public streets for the public service. In so doing it is entitled to the protection accorded to any property owner, including that of an abutter. In the domain of sentiment more is demanded of the strong, intellectually or physically, than of the weak, as well as more required from the rich than the poor, but at the bar of justice all persons are equal, and this company rightfully may ask and should receive the protection that would be accorded to the humble home of the poorest of its employes. The streets of this city do not belong to the complainant, neither will they belong to the defendant when it shall have constructed its proposed railway. They do not belong to any

or all of the corporations of the city, or to any or all of the owners of abutting property, however great and valuable may be the rights which they possess therein.    They belong to the public for its common use, and are controlled by the public for the benefit of each and all of the multitudes who compose it.    As has before been stated by this court, if one abutting owner may maintain a bill and obtain an injunction against the occupation of the highway by a street or elevated railway, then each abutting owner is entitled to the same remedy, and we see no sufficient reason for thinking that an adjudication in a suit brought by one abutting owner would be conclusive upon another; nor do we see why the city, with which the ordinance of appellant was a contract, might not contemporaneously with the filing of the bill by appellee, have brought its suit in the Superior Court, asking that appellant be compelled to perform its contract and lay its tracks and operate its railway as it has agreed to do, and thus that we might have had in the Circuit Court the injunction which appellee obtained against the construction by appellant of its road, and in the Superior Court a decree compelling appellant to proceed with such construction.    To avoid such confusion as this, as well as for other reasons, it has always been the rule that the attorney-general represents the public, and that at his suit public nuisances may be abated, public trespasses restrained, and claims unlawfully asserted against the public be declared baseless.

It is strenuously insisted that appellant is, under the stipulation in this case, to be regarded and treated as a mere trespasser, and we are asked if the complainant is to see its property interfered with by a gang of freebooters, and if we will permit appellant, whose ordinance was, it is said, admitted to have been conceived in fraud and begotten in iniquity, to thereunder construct and operate a railroad in the streets of Chicago.    Even freebooters have rights.    The police may arrest, but the courts will not, by injunction, restrain them from walking along the streets.    The vilest reprobate is, happily, in this land entitled to be heard and tried in accordance with the law of the land, and whatever

may be our opinion of the conduct of appellant, we are in this proceeding to accord to it, as to appellee, such rights as by the law each is entitled to. This court has not heretofore, and will not in this proceeding, give any permission to occupy the streets of Chicago for railway purposes. It is not to this court that parties come to obtain such permission. The only question presented to this court at this hearing is whether the injunction obtained by the complainant in the court below shall be dissolved.

The dissenting opinion of Mr. Justice Mulkey in the suit of Truesdale et al. v. The Peoria Grape Sugar Company, 101 Ill. 561, is thought to afford support for the injunction issued in this case. In such dissenting opinion Mr. Justice Mulkey says: " If the proposed railway, when put in operation, would be open to the public generally, then I concede, under the previous decisions of this court, an injunction would not lie at the suit of a private individual however much he might be injured, by the building and operating of such a road. But such is not the case here. The city had the right to permit a railway to be constructed in one of its streets, which, when completed, would be open to the public generally, for the carriage of goods or passengers, or both, on equal terms to all; but it had no authority to permit such a road to be constructed or operated for the exclusive use of a mere private company. In the one case the city has the discretion to do or not to do; in the other, there is no power to act at all. In the former case, equity will not interpose, but remit the parties to a court of law, and such relief as that tribunal affords. In the latter case, there being a total want of authority on the part of the city to act at all, and the attempt to do so being a clear breach of a public trust with respect to the ownership and control of the streets, a court of equity, according to all the authorities, should and does interpose."

It thus appears that Mr. Justice Mulkey, in his dissent distinctly announces the doctrine of the supreme and this court, that a court of equity will not interfere to prevent the construction in the streets of a city of a public railroad

to be used equally for the benefit of all the public, but will remit the parties to a court of law and such relief as that tribunal affords. This court is not, in this case, called upon to say whether appellee has a right to construct and maintain a street railroad in the city of Chicago. In respect to questions of a similar nature presented in other cases, this court has merely held that a court of equity will not, at the suit of an abutting property owner, restrain the construction of such road and has repeatedly called attention to the fact that in a suit brought by the attorney-general such injunction may be issued. If appellant be but a lawless trespasser, having no right whatever to construct a railroad in the streets of Chicago, the executive authorities of the city are armed with ample power and have sufficient force in this, as in all other cases, to prevent unlawful trespassers upon the public streets. In the nature of things the public domain and the public streets continually invite assault. The rich prize is so open to attack, and the wealth to be obtained so great, that private greed will succeed in wresting to itself control over the streets unless not only the public be vigilant, but courts firm, in maintaining the ancient authority of the public over all its highways. It is at the present time of the utmost importance that such authority be maintained, and that courts be alert to protect public property and public ways from private aggression.

The order of the Circuit Court will be reversed.

Judge Gary took no part in this case.