JACKSONVILLE AND SOUTHEASTERN RAILWAY COMPANY

*v.*

MICHAEL H. WALSH.

*Filed at Springfield March 29, 1883.*

1. EMINENT DOMAIN—*measure of damages.* In a proceeding under the
Eminent Domain act to condemn property for a railroad depot, the cash value
of the property is the only proper measure of damages. All evidence tend-
ing to show that value is proper, and all evidence tending to enhance the
damages above or reduce them below that sum is improper.

2. In such case the evidence should be confined to the market value of
the property sought to be taken, and all evidence of the amount of business
that was or could be done on it, or the probable profits arising therefrom,
should be rejected. The purpose for which the property was used and
designed, its location and advantages as to situation, are proper matters for
the consideration of the jury; but the profits of the business past, and con-
jectural profits for the future, are too speculative and uncertain upon which
to ascertain the market or cash value of the property.

3. The question of the cost of the erecting of such buildings as were upon
the premises is not an element of damages, unless it is shown they would
actually increase the value of the premises to the extent of their cost. Such
improvements may or may not enhance the value of the land to the amount
of their cost. The true question is, not what the property cost, but for how
much would it sell.

4. INSTRUCTION—*calling attention to the evidence of one party.* On an
inquest of damages for property sought to be condemned, an instruction
which singles out and calls attention to the testimony of the land owner is
erroneous, as unfair, and calculated to mislead the jury, by seemingly giving
undue importance to such testimony.

Appeal from the Circuit Court of Morgan county; the Hon. Cyrus Epler, Judge, presiding.

Messrs. Morrison, Whitlock & Lippincott, for the appellant:

The "dry claim for the intrinsic value of the property in question" was the true measure of damages in this case. Sedgwick on Measure of Damages, (6th ed.) side page 566; *Jacob* v. *City of Louisville*, 9 Dana, 144.

The "just compénsation" to Walsh was the actual value of the real estate as it stood, with the improvements and surroundings. 2 Kent, (12th ed.) 340, note.

This court has often held substantially the same rule. *Lake Shore and Michigan Southern R. R. Co.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 30; *Jones* v. *Chicago and Iowa R. R. Co.* 68 id. 380; *Keithsburg and Eastern R. R. Co.* v. *Henry*, 79 id. 292.

The income from the bar-room and hotel on the premises constituted no part of the case before the jury. *Lake Shore and Michigan Southern R. R. Co.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 32; *Booker* v. *Venice and Carondelet Ry. Co.* 101 id. 337.

There was no pretense that the property had ever been or was intended for rent, and the rental value, therefore, was not competent evidence. *Jones* v. *Chicago and Iowa R. R. Co.* 68 Ill. 380; *Booker* v. *Venice and Carondelet Ry. Co.* 101 id. 337.

Mr. W. H. Barnes, Mr. Geo. W. Smith, and Mr. Oscar A. De Leuw, for the appellee, discussed the facts and evidence as to the value of the property sought to be condemned, to show it fully justified the finding of the jury.

To test the compensation for taking the property of Walsh by the selling price in open market, is not just. It would not compensate. It is true the property was worth more in

the use he was putting it to than any other.    True, it had a special value, and for this he was entitled to compensation. *Railroad Co.* v. *Van Horn*, 18 Ill. 258.

Mr. Justice Walker delivered the opinion of the Court:

This was a proceeding under the Eminent Domain act, to condemn land for railroad purposes.   The petition was filed and presented to the circuit judge, and he fixed the time for a hearing on the 12th of August, 1882.   On the day thus fixed appellee appeared and filed an answer, denying all the material allegations of the petition.   A jury was impaneled, and, at the instance of appellee, they went upon and examined the premises sought to be condemned, before the admission of any evidence.   The evidence was heard by the jury, and they found and reported $14,000 as the damages appellee would sustain by taking the property for a depot for the road.   Appellant thereupon entered a motion for a new trial, but it was overruled by the judge, and a final order entered on the finding of the jury.   The railroad company thereupon prayed and perfected an appeal, and the record is brought to this court, and various errors are assigned.

There can be no plainer proposition than the cash value of the property condemned was the sum appellee was entitled to recover as damages.   All legitimate evidence tending to establish that sum was proper, and all evidence that tended to enhance the damages above or reduce them below that sum was illegitimate and improper.   The inquiry should have been confined to the market value of the property, and all evidence of the amount of business that was or could be done in it, or the probable profits arising therefrom, was improper, and should have been rejected.   The purposes for which it was used and designed, its location and advantages as to situation, were proper matters of consideration by the jury; but the profits of the business of the past, and conjectural profits

for the future, were too speculative and uncertain upon which to ascertain the market or cash value of the property. The question was not the value of the property for a short term of years, but the entire property, and its value. Here, evidence was admitted to show the sales of liquor in the saloon each day, and the profits accruing from these sales. Such sales depend so largely on varying circumstances that the damages are purely speculative. Whether there shall be licenses granted to keep saloons in the municipality is contingent, and wholly uncertain. No one can say that when appellee's license expires, he or others can procure another for years, if ever, afterwards. That all depends upon the discretion of the municipal authorities. Again, one person can do a greatly larger business in the same calling, at the same place, and under the same circumstances, than another. It may be that appellee could, in that saloon, do double the amount of business that any other person could do. Such considerations are purely contingent, and altogether speculative, and can not form the basis for fixing the price of the property, and its market value was the question involved, and which the jury were required to find. That was the measure of the damages they were to assess.

The question as to the number of guests that stopped at the house daily, was of the same character. That depended upon a great number of contingencies. As one witness answered, the house was sometimes full, and sometimes it was not. Again, the question of the cost of erecting such buildings was not an element of damages, unless it were shown they would actually increase the value of the premises to the extent of their cost. All know that the cost of improvements on real estate is not a true test of their value in market. They may, or not, owing to circumstances, enhance the value of the property to the amount of their cost. The true question was, what was the value of the property as it then was,—not what it cost, but for how much would it sell.

The admission of this evidence, against the objection of appellant, was also error.

It is urged that the court erred in giving appellee's sixth instruction. It singles out and calls attention to the testimony of appellee, in finding their verdict. Such a practice has long been condemned, in numerous cases in this court, as unfair, and calculated to magnify the importance of the evidence of the particular witness. Here there were many witnesses as to the value of the property, and great contrariety of opinion as to its value, and the jury might well ask why the judge should refer to the evidence of this particular witness, unless it was regarded as more reliable than that of all others. Even his own witnesses did not all agree with him as to value. Then why single out and refer to his evidence above all others, and this, too, when he was a deeply interested witness? Why should the court thus indorse his evidence? We must in this case, as we have in many previous cases, hold this instruction erroneous, and, in the conflict of the evidence, ground for a reversal.

For the errors indicated the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*