## The Sanitary District of Chicago v. Bridget McGuirl.

1. EVIDENCE—*Of Cash Value—What is Sufficient.*—The profits of the business of the past, and conjectural profits of the future, are too speculative and uncertain upon which to ascertain the market or cash value of property.

2. EMINENT DOMAIN—*Rule of Compensation.*—The proper compensation for property taken is the fair market value.

3. DAMAGES—*To Property by Public Improvement.*—Damages to property by a public improvement must be estimated under the same rules that they would be in a condemnation suit.

4. SAME—*Right of Jury to View the Premises.*—At common law the court is not bound to permit the jury to view the premises. The furthest the Supreme Court has gone in such a case, is to hold that it is within

the sound discretion of the court to determine whether the jury shall be permitted to view the premises, and that it is not error to permit such view.

5. Same—*When View Should be Refused.*—Such view, when permitted, should be before any evidence is heard. When the request is not made until after all the evidence is in, it is properly refused.

6. Same—*Damages of Temporary Character.*—A claim for loss of rent, by reason of obstruction to access to and egress from a building during the progress of a public work, can not be sustained, it being merely a burden incidentally imposed upon private property adjacent to a public work, and without which such improvements can seldom be made.

Action for Damages to property by a public improvement. Appeal from the Circuit Court of Cook County; the Hon. George W. Brown, Judge, presiding. Heard in this court at the March term, 1899. Reversed and remanded. Opinion filed January 4, 1900.

M. V. Gannon and S. S. Fallas, attorneys for appellant; Charles C. Gilbert and Seymour Jones, of counsel.

Damages should only cover actual injuries in the way of depreciation of market value, and matters speculative, though mentioned in the testimony, should be rejected. Jones v. Chicago & Iowa R. R. Co., 68 Ill. 380; Kiernan v. Chicago, Santa Fe & Cal. Ry. Co., 123 Ill. 188; Metropolitan, etc., R. Co. v. Stickney, 150 Ill. 362.

Profits of past business on the land in question, or conjectural future profits, are not proper matters of consideration. Jacksonville, etc., Ry. Co. v. Walsh, 106 Ill. 253; De Buol v. Freeport, etc., Ry. Co., 111 Ill. 499; Chicago & E. R. Co. v. Blake, 116 Ill. 163.

Inconvenience or damage common to entire public not ground for damages to individuals. Chicago & W. Ind. R. Co. v. Ayres, 106 Ill. 511; City of E. St. Louis v. Flynn, 119 Ill. 200; City of Springfield v. Griffith, 21 Ill. App. 93.

Loss of rent, by reason of obstructions to access to and egress from a building during the progress of the work on a public improvement, is not a damage to property not taken, but merely a burden incidentally imposed on private property. Osgood v. Chicago, 154 Ill. 194.

The mere diversion of travel, in consequence of the construction of a viaduct, however detrimental to the business

of plaintiff, is a thing for which he can not recover. Hohmann v. Chicago, 140 Ill. 226, and 41 Ill. App. 41.

WILLIAM E. HUGHES and JOHN J. COBURN, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee and against appellant for damages to appellee's real property, alleged to have been occasioned by appellant in constructing the drainage channel.

The jury returned a verdict for $17,000, a motion for a new trial was overruled, and the court rendered judgment on the verdict.

Appellant is the owner of four lots, two of which, numbered 11 and 12, front east on Western avenue in the city of Chicago, and two of which, numbered 21 and 22, front on what purports, in a plat put in evidence by appellee, to be a street called Ash street or Artesian avenue. Between the lots fronting on Western avenue and those fronting on Ash street, the plat mentioned shows an alley of the width of fifteen feet. The lots are twenty-five feet in width by 125 feet in depth, giving a frontage on Western avenue of fifty feet and on Ash street the same, plaintiff's entire property running fifty feet in width from Western avenue to Ash street, including the alley. The lots fronting on Western avenue are mentioned by the witnesses as the front lots, and the others as the rear lots, and will be so referred to in this opinion.

The northwest corner of the north rear lot, numbered 22, is a little more than seventy-five feet south of the drainage channel, and the northeast corner of the north front lot, numbered 11, is a little more than 175 feet south of the drainage channel, as shown by appellee's plat. On the north front lot is a brick one-and-a-half-story cottage, with a frame basement, which was erected over seventeen years ago. On the rear lots there is a rendering and soap factory and barn. Appellee's attorney, on the trial, offered in evidence a plat to illustrate the location of the channel, the

Sanitary District of Chicago v. McGuirl.

grades, roadways, bridges and surroundings of appellee's property, and examined a witness in reference to it, but it does not appear that it was admitted in evidence, or any ruling in regard to it, and there is no plat in the record showing these things.

Appellee conducted a rendering and soft soap factory on her rear lots prior to the fall of 1895, when work was commenced on that part of the drainage channel in the vicinity of her property, and, at the time of the trial, was still engaged in that business. The drainage channel runs northeast and southwest, cutting through Thirty-first street and Ash street north of appellee's property. Thirty-first street is about 250 feet north of the property, as shown by appellee's plat. The damage complained of is the cutting off access to the rear lots, the causing water to flow into the basement of appellee's house, rendering such basement useless and uninhabitable, the settling and cracking of the walls of the house by reason of such flow of water, etc.

Appellee, in her examination in chief, testified that the value of her property, at the time they started to dig the channel, including the whole business, was about $30,000, and that the decrease in value by reason of the work was about $12,000. Being recalled, as a witness for herself, she testified that when she before said that the damage was $12,000, she meant that the damage to the real estate, without reference to the business, was $12,000, but that she considered the damage to her property, as a whole, about $29,000. On cross-examination she testified that the profits were the main thing in her estimate; that the value of her property was $30,000; that in such estimate she included about $15,000 for profits. John Fitzpatrick, a witness for appellee, also considered, in his estimates of value and depreciation, the difference between profits made before the work commenced and the profits which he considered might be made in the business thereafter. The following occurred in the examination of the witness:

"Q. Do you, or do you not, mean to be understood as saying that the real estate there, for any purpose, was worth $45,000 ? A. No, not in that way.

" Q.   What do you mean ?   A.   Why, that the difference in the profits of the business, or the difference in the percentage now and before that."

This testimony was given after appellee had testified, as heretofore stated, and had also testified that she had made in her business $800 and $900 per month.   Hale, another witness for appellee, included in his estimate of value, $18,000 on account of the business which had been established on the premises.

At the conclusion of appellee's evidence in chief, appellant's attorney moved the court to exclude from the jury all evidence showing the amount of profit derived from appellee's business, which motion the court overruled and appellant's attorney excepted.   Appellant's attorney then moved to exclude all testimony as to the value of the business separate and apart from the property, or over and above the property, whereupon the court said :   " If the motion is made as to that line of testimony that came out in response to your own questions, it is overruled.   If there is any that was introduced over your objections by them, and you will call my attention to it, I will exclude it;" to which ruling an exception was preserved.   It appears, from a colloquy between the court and appellant's attorney during the trial, that the court ruled as it did, because it was the understanding of the court that the evidence as to profits was brought out in the first instance by appellant's attorney.   This is true, in so far as the express evidence of appellee as to profits is concerned, but the evidence was brought out in the legitimate cross-examination of appellee, and the fact that it was so brought out, is not a sufficient reason for refusing to exclude it from the consideration of the jury.   Appellee, on direct, testified, as before stated, that while the damage to her realty was $12,000, the damage to her property, as a whole, was $29,000.   It was entirely competent to interrogate her, on cross-examination, as to the elements of her estimate, as to how she figured value and damage, and to inquire whether she included the profits of her business in her estimate, and if so, how much profits.   The testimony of a witness is frequently excluded

altogether by reason of facts brought out on his cross-examination. That the evidence as to profits should not be considered by the jury in passing on the question of compensation to appellee was recognized as the law by the court, is evidenced by the following instruction, which the court gave to the jury:

"The court instructs the jury that there can be no recovery for loss of business or loss of profits."

The giving of this instruction did not, in our opinion, cure the error of refusing to exclude the evidence from the consideration of the jury before argument. The evidence not having been excluded, appellee's counsel used it in his closing argument to the jury, saying:

" It is undisputed that she made $800 a month out of this · business, clear profit. You can not escape from that evidence. If that is the evidence, and undisputed and proven, you can not escape from giving her a just compensation, full measure for the injury she has sustained. Eight hundred dollars a month is nine thousand six hundred dollars a year."

Appellant's attorney objected to these remarks, saying:

" I object to your verdict on $9,000 profits in the business," to which appellee's attorney responded:   " That is not what I am doing." The Court:   " Do you dispute that there is such evidence in the record?"   Appellant's attorney:   " I dispute that there is any evidence in this record that there was $9,000 a year profits made in that business." Appellee's attorney then proceeded with his argument as follows: "I say he is right. It is not $9,000. It is $9,600 a year—$800 a month. Go and learn arithmetic. And I want to say another thing, that that is sixteen per cent on $60,000," etc.

The evidence being before the jury, appellee's attorney had a right to comment on it, and the manner in which he did so, with the apparent approval of the court, indicated not alone by silence, but by the question addressed by the court to appellant's attorney, " Do you dispute that there is such evidence in the record?" was well calculated to influence the jury to award, by their verdict, a larger amount than they would otherwise have awarded, and, in our

opinion, in view of the evidence in the case, it did so influence the jury, notwithstanding the instruction of the court quoted, *supra*.

Much of the evidence for appellee is very unsatisfactory. After testifying on her own behalf as to value, she apparently disqualified herself as a witness by saying that she could not tell what was the fair cash value of the property, or what it would sell for in the market; that she could not tell whether she had an opinion or not. Edward McGuirl, appellee's son, after testifying on his direct examination that the fair cash market value of the property a month before the canal was put there was $50,000, testified on his cross-examination that he did not know what the lots were worth in the market, and that when he was testifying as to the value of the property he meant by the fair cash value of it, that he would not sell it for any less. No objection being made by appellant's attorney, the evidence of these witnesses was allowed to remain in the case. None of the witnesses for appellant placed the value of the property, before appellant commenced work in its vicinity, higher than $6,500, or the damage to it higher than $2,700.

The contention of appellee's counsel that the evidence as to profits was competent, is erroneous.

Jacksonville & S. E. Ry. Co. v. Walsh, 106 Ill. 253, was a proceeding under the eminent domain law, to condemn Walsh's land. The appellee did a saloon business on the land. The court say:

"The profits of the business of the past and conjectural profits for the future were too speculative and uncertain upon which to ascertain the market or cash value of the property."

In Braun v. Met. W. Side El. R. R. Co., 166 Ill. 434, which was also a condemnation case, the court, after stating the proper rule of compensation, viz., the fair market value of the property proposed to be taken, say: "This rule excludes all evidence as to the amount of business done or which could be done in the property, or the probable profits arising therefrom," citing the case first cited *supra*.

Osgood v. City of Chicago, 154 Ill. 194, was a case, like

the present, to recover compensation for property not taken, but alleged to have been damaged by a public improvement, and the court say : " The damages, therefore, recoverable in this action, must be estimated under the same rules that they would have been upon a petition by the city to condemn the property."

These authorities dispose of the contention of appellee's counsel.

At the close of the evidence, appellant's attorney moved the court to permit the jury to view the premises, which motion was not objected to by appellee's attorney, but the court overruled the motion. This ruling is assigned as error. The object of the present suit is precisely the same as that of a cross-petition filed in a proceeding to condemn land under the provisions of the eminent domain act, and in the latter case it is expressly provided that the " jury shall, at the request of either party, go upon the land sought to be taken or damaged, in person, and examine the same, and after hearing the proof offered, make their report in writing," etc. 2 S. & C.'s Stat., C. 47, parag. 9.

The proceedings by cross-petition and by original suit being substantially the same, although different in form, and having the same object, it would seem that the rule should be the same. It is self-evident that in both cases there is the same reason for a view by the jury and, as a general rule, *ubi eadem ratio ibi idem jus.* Nevertheless, we can not say that in such case as the present it is error to refuse to permit the jury to view the premises on motion of one of the parties, because the eminent domain act applies in terms only to proceedings under and by virtue of that act, and at common law the court is not bound to permit such view. The farthest the Supreme Court has gone in such a case as the present is to hold that it is within the sound legal discretion of the court to determine whether the jury shall be permitted to view the premises, and that it is not error to permit such view. Springer v. City of Chicago, 135 Ill. 552 ; Osgood v. City of Chicago, 154 Id. 194.

In the present case, the request not having been made until after all the evidence was in, we think the court very

properly refused to permit a view by the jury.  Such view, when permitted, should be before any evidence is heard, as contemplated by paragraph 9 of the eminent domain law, cited *supra*.

The uncontradicted evidence is, that the work in the vicinity of appellee's property is not completed, and that some of the things complained of in the present case are incidental to the performance of the work and of a merely temporary character.  In Osgood v. City of Chicago, *supra*, the court say:

"The claim set up for loss of rent by reason of obstruction to access to and egress from the building during the progress of the work, can not be sustained.  That is not damage to property not taken, within the meaning of the constitution, but merely a burden incidentally imposed upon private property adjacent to a public work, and without which such improvements can seldom be made," etc.

One of the complaints made by appellee, and relied on as an element of damage, is that access to her rear lots by the way of Ash street was cut off; yet we can not find in the record any sufficient evidence that what is called Ash street is a public street, or that appellee has any interest in it appurtenant to her lots.

On account of the error in overruling the motion to exclude the evidence as to the value of appellee's business and the profits derived therefrom, the judgment will be reversed and the cause remanded.