# CASES

## C. L. Tanner, Appellee, v. F. H. Clapp et al., Appellants.

### Gen. No. 4,825.

1. CHANGE OF VENUE—*what insufficient to show consent of co-parties to application for.* Where one of several defendants applies for a change of venue, it is not sufficient if the consent of his co-defendants to the application only appears by a statement contained in the petition (which was signed only by the defendant making the application), that such application was made with the consent and on behalf of all of the defendants.

2. PLEADINGS—*effect of stipulation waiving informalities in.* The common counts are sufficient to admit a recovery of commissions for the sale of real estate where it is stipulated that all proper pleadings in assumpsit for the recovery of commissions for the sale of real estate should be considered in.

3. WITNESSES—*how far parties in interest competent.* A party in interest is competent as a witness to contradict the testimony of a deceased party which testimony had been given upon a former hearing of the cause and was read in evidence upon a subsequent hearing.

4. EVIDENCE—*what essential to save for review propriety of ruling excluding evidence.* The wrongful exclusion of evidence can only be saved for review where an offer of proof has been made, that is to say, where it is indicated what the evidence sought to be introduced would be.

5. INSTRUCTIONS—*must not single out testimony of particular witness.* An instruction should not be given which singles out and gives undue prominence to the testimony of a particular witness.

6. INSTRUCTIONS—*must not inferentially cast reflections upon testimony of witness.* An instruction as to the credibility of witnesses which singles out a particular witness and by its terms appears to

cast suspicion upon the testimony of such witness, is improper and
should be refused.

7. INSTRUCTIONS—*when must sum up entire cause.* An instruc-
tion which purports to summarize the principal facts is erroneous
where it directs the attention of the jury only to those facts which
are favorable to one of the parties.

Assumpsit.   Appeal from the Circuit Court of Livingston County;
the Hon. GEORGE W. PATTON, Judge, presiding.   Heard in this court
at the October term, 1907.   Reversed and remanded.   Opinion filed
March 11, 1908.

DUNCAN, DOYLE & O'CONNOR and A. C. NORTON, for
appellants.

R. S. McILDUFF and B. R. THOMPSON, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of
the court.

A. J. Ridinger and C. L. Tanner brought suit in assump-
sit in the Circuit Court of Livingston county against F. H.
Clapp, H. D. Osgood, R. Menaugh, J. H. Kane, C. Mc-
Greevy and L. T. Earnhardt, who constituted a partnership
known as the Illinois-Manitoba Land Co., to recover com-
mission for the sale of land.   At the first trial the jury dis-
agreed.   Afterwards, Ridinger died and the suit proceeded
in the name of Tanner as sole plaintiff.   The pleadings being
mislaid, it was stipulated that all proper pleadings in as-
sumpsit for the recovery of commissions for the sale of real
estate be considered in.   An application by appellant
Menaugh for a change of venue was denied.   There was a
trial and a verdict for appellee for $640.   A motion for a new
trial was overruled, judgment was entered on the verdict
and this appeal was taken by the defendants.

It is urged that the court erred in denying the petition
for a change of venue.   The petition stated that the applica-
tion was made with the consent and on behalf of all the
defendants, but it was signed and verified by appellant
Menaugh only.   Section 9, chapter 146, Hurd's R. S. 1905,
provides: "When there are two or more plaintiffs or de-

fendants, a change of venue shall not be granted unless the application is made by or with the consent of all the parties plaintiff or defendant as the case may be," with a proviso relative to proceedings for the condemnation of property not material here. Menaugh's co-defendants did not sign the petition and there is no evidence of their consent save the conclusion to that effect set out in the petition and its verification which is but hearsay, and therefore, in our opinion, not in compliance with the requirements of the statute. Had their signatures appeared on the petition or their consent been conveyed to the court in any direct way so as to bind them, it would have been sufficient.

It is urged that as the declaration contained the common counts only, a recovery could not be had in the absence of a special count on the contract. The stipulation providing that all proper pleadings in assumpsit for the recovery of commissions for the sale of real estate should be considered in, obviated the necessity of a special count on the contract or any other formal pleading by either appellee or appellants.

Appellants, in the spring of 1903, were engaged in selling land in Manitoba and Assiniboia. Appellant Earnhardt, in the latter part of April of that year, visited Saunemin, and while there, offered the agency of their lands to P. H. Lannon, then associated in the real estate business with one Mies. Lannon did not accept the agency at first, but held the matter under consideration until about the middle of June and then accepted it. While Lannon or Lannon and Mies had the subject of the agency under consideration, Earnhardt had some negotiations relative to the agency of appellants' lands with Ridinger and Tanner. Earnhardt claims that their agency with them was but temporary, to be surrendered if Lannon accepted the agency, and that they were to have commissions only on land sold to customers whom they produced at once and before Lannon took the agency. Ridinger and Tanner, on the other hand, claimed that their agency was unconditional. They in company with Earnhardt visited and solicited a number of persons to buy land, among whom were Ed. Thornton and William Sell-

myer. On June 15, 1903, Lannon accepted the agency, and
Earnhardt notified Ridinger that their services were ended.
On July 7, Thornton and Sellmyer went with Lannon to
Manitoba and bought land, Thornton 160 acres and Sellmyer
640. A few days before they went, one Lang, representing
the Douglas Land Company, a competitor of appellants,
visited Saunemin and with Tanner visited Thornton and
Sellmyer and talked land to them in Tanner's presence.
This suit was brought to recover commissions for the sale of
real estate made to Thornton and Sellmyer and is based on
an alleged promise by Earnhardt to Ridinger and Tanner
that they should have a commission of $1 per acre on any
land sold to Thornton and Sellmyer, whether sold by them
or some one else. It appears that appellants, prior to Lan-
non's accepting the agency, telegraphed appellee that an
excursion was about to go to the lands and to bring on his
men, but that they did not do so, and that soon after Lannon
accepted the agency. Appellants notified Tanner and Rid-
inger of this fact.

Appellants' contention is that appellee did nothing towards
bringing about the sale of the land to Sellmyer and Thorn-
ton, for which sale to Sellmyer it is evident the commission
was allowed by the jury, but that on the contrary, Sellmyer
refused to have any dealings with appellee and had been
dealing with Lannon before he accepted the agency, and had
stated that he would go to see the lands with no one else,
and that Lannon effected the sale to Sellmyer. Appellants
paid Lannon a commission for the sale to Sellmyer, and
Lannon had a man named Watts in some way associated with
him, to whom he paid a part of the commission. Watts
testified to a conversation with Ridinger, in which Ridinger
made certain statements tending to show that he and Tanner
had no cause of action against appellants for these com-
missions. The court excluded the testimony of Watts on the
ground that he was a party in interest. The fact that he had
some arrangement with Lannon by which he was to have a
part of the commission for the sale made by Lannon did
not make him a party in interest. Moreover Watts had re-

Tanner v. Clapp.

ceived his part of the commission, and certainly that terminated his interest. He would be under no obligation to pay it back if appellee succeeded in this suit. It is true, he was asked on cross-examination if he had not stated since the first trial, that they had the commission if they could hold it, but that if the suit went against appellants, they were going to return it, or that in substance, to which he answered, "No," but no proof was offered to contradict his statement. Watts' testimony was competent and material, and its exclusion was error.

On the trial, the evidence of Ridinger, the deceased plaintiff and Tanner's co-partner, taken on the former trial was read. Appellant Clapp was offered as a witness in rebuttal thereof, and to contradict the testimony of Tanner. An objection to his competency was sustained because of the death of Ridinger. We are of the opinion that he was a competent witness to rebut anything contained in the evidence of Ridinger, and anything testified to by Tanner, but was incompetent for any other purpose. But for appellants to avail themselves of the wrongful exclusion of Clapp's testimony, they should have made direct offers of proof as to what he would be asked to testify to. This appellants did not do, except in one instance and the record discloses that this was upon an immaterial question. Therefore we are of the opinion that the exclusion of his testimony does not amount to harmful error. The court should, however, have permitted Clapp to testify and left appellee to object if any questions were asked him outside the testimony of Ridinger and Tanner. We are of the opinion that it was competent to prove, as appellants offered, that after Lannon was appointed agent, Tanner introduced Sellmyer to Lang, agent of the Douglas Land Co., a competitor of appellants, and stood by while such agent sought to sell him lands. This would bear upon the case in two ways. First it would tend to show that they were acting adversely to the interest of their alleged employers and working against them instead of with them, and it might lead the jury to conclude that they had been so unfaithful in that respect that they ought not to receive

compensation for their alleged services; and second, it would tend to rebut appellee's claim that after Lannon was appointed Earnhardt told him and Ridinger that they should have their commission on the lands if they were sold to these parties, whether they had anything to do with the making of the sale or not, because if there had been such an agreement, they would not be likely to be taking part in an effort to sell the lands by a rival dealer. Such of the trial court's rulings as kept out evidence of any co-operation between Ridinger and Tanner and the agent of a rival company to sell to Sellmyer and Thornton, were improper. There was no impropriety in the court refusing to admit proof that the agent of the rival company reported to his company that he had hired Tanner as his agent to sell their lands. It would have been competent to prove by such rival agent that he did hire Tanner to sell these rival lands before the sale to Sellmyer and Thornton or at the time the rival agent was introduced to them by Tanner, but the agent's statement to his company was mere hearsay.

Appellants complain of a number of other rulings excluding evidence offered by them. We will not extend this opinion to consider them except to say that a careful examination of the record discloses that some matters so excluded may have been material and competent, but they were properly excluded because not proper subjects of cross-examination.

The court in appellee's third and eighth instructions singled out and made prominent, as though specially important, the testimony of Ridinger, the deceased plaintiff, and then undertook to give the jury a summary of the facts which they were to consider in arriving at their verdict, but directed their attention only to those favorable to appellee, and omitted all that tended to illustrate or establish appellants' theory of the case, and concluded by telling the jury that if they found the facts as stated, they should return a verdict for the plaintiff. One of the vices of these instructions is the singling out and calling the jury's attention to the testimony of the witness Ridinger, as if in the judgment of the court his testimony was decisive of the case. Such a practice has

long been condemned in numerous cases in the courts of this
State as unfair and calculated to magnify the importance of
the testimony of the particular witness.    J. & S. Railway Co.
v. Walsh, 106 Ill., 253; Wright v. Bell, 5 Ill. App., 352;
Brown v. Monson, 51 Ill. App., 489.    The second vice of
these instructions is that they purport to summarize the
principal facts but direct the attention of the jury only to
those favorable to one of the parties.    In Evans v. George,
80 Ill., 51, it is said, "It is the duty of the jury to consider
all the facts, and when the court assumes to direct their atten-
tion to the facts, it should refer them to all the facts, so as to
present the case fairly for both parties.    Otherwise the jury
might understand the facts stated in the instructions are the
only ones necessary to be considered in deliberating on their
verdict."

Appellee's ninth instruction told the jury that if they be-
lieved from the evidence that the witness, William Sellmyer,
before testifying made any statements out of court or any
statements on the former trial concerning any material mat-
ter different and at variance with what he stated on the
witness stand, they had the right to consider whether these
facts tended to impeach his recollection or truthfulness.    This
instruction had a tendency to make the jury think that the
court saw something especially suspicious in the testimony of
this witness.    This instruction should have been refused or so
modified as to apply to all other witnesses in the case.

For the errors indicated, the judgment of the trial court
is reversed and the cause is remanded.

*Reversed and remanded.*